385 A.2d 1346

COMMONWEALTH of Pennsylvania

v.

**John HOLGUIN, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 17, 1977.

Decided April 13, 1978.

296

Lester G. Nauhaus, Pittsburgh, for appellant.

Charles W. Johns, Assistant District Attorney, Pittsburgh, with him Robert E. Colville, District Attorney, Pittsburgh, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant contends that the Commonwealth failed to produce sufficient evidence to convict him of (1) carrying a firearm without a license,[1] (2) making terroristic threats,[2] (3) recklessly endangering another person,[3] and (4) conspiracy to commit criminal mischief.[4] We reverse the judgment of sentence on the charge of conspiracy to commit criminal mischief. While we find sufficient evidence to sustain convictions on all other charges, we vacate the remaining judgments of sentence and remand for resentencing.

On February 28, 1976, Allegheny County officials arrested appellant and charged him with the crimes listed above plus simple assault[5] on a woman named Anita Racchini. At a non-jury trial in the Allegheny County Court of Common Pleas on July 22, 1976, the Commonwealth produced the following testimony. Patricia Castelli testified that she was the owner and operator of Toto's Bar Hotel on Woodstock Avenue in Swissvale, Allegheny County. At about 9:00 p. m., on February 19, 1976, she observed three men—Eugene Slick, William Hughes, and appellant—enter the bar and order a round of drinks. Ten or fifteen minutes later, after consuming their drinks, the three men started to walk towards the door. On the way, Slick picked up some money which did not belong to him from the bar counter. At this point, one Chuck Flenner and another man interceded and grabbed Hughes and Slick. A fight of a few minutes duration ensued. When Slick extricated himself from the entanglement, he ran towards the door. Appellant had already exited. Slick yelled to appellant: "Get the gun." Appellant complied and shortly afterwards ran into the bar

1. The Uniform Firearms Act, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 6106; 18 Pa. C.S. § 6106.

2. The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 2706; 18 Pa. C.S. § 2706.

3. The Crimes Code, supra; 18 Pa. C.S. § 2705.

4. The Crimes Code, supra; 18 Pa. C.S. §§ 903, 3304.

5. The Crimes Code, supra; 18 Pa.C.S. § 2701.

with a small .25 automatic pistol in his hand. Appellant pointed the gun at everybody in the bar; the patrons, understandably frightened, froze. Appellant then handed the gun to Hughes. Hughes went up to each of the 16 people in the bar, stuck the gun under each person's nose, and said, in turn, "I know you; I know you; I know you; and I know I know you." While Hughes was making his terroristic tour, Ms. Castelli attempted to call the police. The telephone was located on the back bar; she put the phone on the floor of the bar and stooped down. Appellant saw her do this, grabbed her by the hair, and pulled her up. He stated: "Leave that phone alone. Don't you call the police." This scared Ms. Castelli; she thought he was going to kill her. At this point, Chuck Flenner said something to Hughes; Hughes responded by hitting Flenner on the head with the pistol. Flenner's wife, Dorothy, told Hughes to leave her husband alone. Hughes then dropped the gun and "smacked her all over the bar." Slick recovered the gun. A very frightened Ms. Castelli again attempted to call the police. Appellant, swinging his arms at Ms. Castelli, leapt over the bar, grabbed her, and pulled her out of her crouching position. He reiterated: "I told you to leave that phone alone." Hughes, Slick, and appellant then decided to leave the bar. As they exited, appellant hollered: "We will be back with more guns." Hughes uttered a similar threat. The three men then drove away; the time was now about 10:00 p. m.

After the three men left, Ms. Castelli asked all her customers to leave because she wanted to close the bar after this trying experience. However, the patrons, severely shaken, wanted a drink and asked to stay. Ms. Castelli acquiesced and locked the door. She did not call the police.

At about 11:45 p. m., Ms. Castelli and others inside the bar heard a sound outside the bar door. The door had a curtained window. A patron drew the curtain back, glanced outside, and saw a big man with a red beard. Ms. Castelli looked out another window and saw the same man. She then walked to the door and looked through its window; she

stared straight into a barrel of a Lugar pistol held by Hughes. Ms. Castelli turned off the lights and yelled to everybody to get down on the floor. Everyone did so. The persons outside the bar attempted to kick the bar door open, but failed. Frustrated, they fired four shots into the bar; the bullets lodged in the wall behind the bar area and one hit the bar sink. The terrorizers then departed. According to Ms. Castelli, all the occupants of the bar were "frightened to death."

On cross-examination, Ms. Castelli stated that she did not know if the .25 automatic pistol which appellant had wielded during the first incident at the bar had been loaded or operable. However, she was absolutely positive that appellant yelled: "We will be back with more guns." She also did not know whether appellant had participated in the 11:45 p. m. occurrence.

Lee Bechtold, a patron at Toto's Bar Hotel on February 19, 1976, testified next for the Commonwealth. He corroborated every detail of Ms. Castelli's account. In particular, he was certain that appellant screamed: "We are coming back with more guns." Like Ms. Castelli, however, Mr. Bechtold did not know whether the .25 automatic pistol was loaded or whether appellant returned with Hughes at 11:45 p. m.

Lieutenant James McCann of the Swissvale Police Department completed the Commonwealth's case-in-chief. He testified that he had investigated the events which triggered the instant prosecutions. He found bullet holes and spent lead slugs inside the bar. He also determined that appellant did not have a license to carry a firearm. At this point, the Commonwealth introduced a state police form which stated that appellant did not possess such a license.

When the Commonwealth rested, appellant's counsel demurred to the evidence on all counts. The lower court dismissed the simple assault charge because the Commonwealth had adduced no evidence that appellant assaulted the

Anita Racchini specified in the indictment. However, the lower court overruled the demurrers on all other counts.

In his defense, appellant presented three witnesses, his girlfriend, Connie Sestak, and two friends, Thomas Law and William Farrish, who testified that from 8:00 p. m. to 1:00 a. m. or 2:00 a. m. on February 19–20, 1976, appellant played cards and drank beer at the house of Thomas Law. Slick who had already pleaded guilty to charges stemming from the February 19, 1976 events,[6] also testified. While he admitted his participation in the initial fracas at Toto's bar, he denied that anyone had a gun, that anyone made threats, or that appellant accompanied him to the bar. Instead, he stated that a man named "Joe" who resembled appellant was with him. The Commonwealth then called Ms. Castelli on rebuttal. She testified that Thomas Law had been the man with the red beard outside Toto's Bar Hotel at 11:45 p. m., on February 19, 1976.

At the conclusion of the testimony, the lower court stated that it found the Commonwealth witnesses to be much more believable than the defense witnesses. The court then found appellant guilty on all the remaining charges. Appellant filed written post-verdict motions which the lower court denied. The court sentenced appellant to a one to two year term of imprisonment on the terroristic threats charge; this sentence was to run consecutively to a sentence which appellant was then serving for another unrelated crime. On the charge of recklessly endangering another person, the lower court sentenced appellant to a two year term of probation which would commence upon the expiration of his sentence on the terroristic threats charge. On the charge of conspiracy to commit criminal mischief, the lower court sentenced appellant to a one year term of probation to commence upon completion of the probationary period on the charge of recklessly endangering another person. The court suspended sentence on the charge of carrying a firearm without a license. Finally, the court ordered appellant to pay the costs of prosecution. This appeal followed.

6. The record does not reveal to what charges Slick pleaded guilty.

■ Appellant contends that the Commonwealth failed to produce sufficient evidence to sustain any of his convictions. Before reviewing each of his convictions *seriatim,* we will set forth the general principles governing our review of the sufficiency of the evidence to sustain a conviction on a particular charge. In *Commonwealth v. Waters,* 463 Pa. 465, 468, 345 A.2d 613, 614 (1975), our Supreme Court stated the applicable test: " ' "[T]he test of sufficiency of evidence is whether accepting as true all the evidence, together with all reasonable inferences therefrom, upon which the jury could properly have based its verdict, such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt." ' *Commonwealth v. Carbonetto,* 455 Pa. 93, 95, 314 A.2d 304, 305 (1974). See also *Commonwealth v. Clark,* 454 Pa. 329, 311 A.2d 910 (1973); *Commonwealth v. Oates,* 448 Pa. 486, 295 A.2d 337 (1972). Furthermore, as verdict winner, the Commonwealth is entitled to have the evidence viewed in a light most favorable to it. *Commonwealth v. Long,* 460 Pa. 461, 333 A.2d 865, 866 (1975); *Commonwealth v. Rife,* 454 Pa. 506, 509, 312 A.2d 406 (1973); *Commonwealth v. Rankin,* 441 Pa. 401, 404, 272 A.2d 886 (1971)." Finally, guilt must be proved and not conjectured. The reasonable inference of guilt must be based on facts and conditions proved, not solely on suspicion or surmise. *Commonwealth v. Bausewine,* 354 Pa. 35, 41, 46 A.2d 491, 493 (1946); *Commonwealth v. Navarro,* 251 Pa.Super. 125, 380 A.2d 409 (1977). We will now apply these principles as we review the evidence pertaining to each of appellant's convictions.

Appellant first contends that the Commonwealth produced insufficient evidence to prove that he carried a firearm without a license in violation of 18 Pa. C.S. § 6106. This section provides, in pertinent part: "No person shall carry a firearm in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business, without a license therefor as provided in this subchapter." Specifically, appellant argues that the Commonwealth failed

to prove beyond a reasonable doubt that the .25 automatic pistol which he carried was operable.[7]

Appellant argues that *Commonwealth v. Layton*, 452 Pa. 495, 307 A.2d 843 (1973), controls the instant case. In *Layton*, the Supreme Court reversed a conviction for possession of a firearm by a person who had previously been convicted of a crime of violence.[8] The Court stated that the Uniform Firearms Act only covered objects which could cause violence by firing a shot; a gun which was not operable or could not readily be made operable would not be capable of causing such violence. In *Layton*, the parties stipulated that the firearm was not operable at the time the police observed defendant with the gun and apprehended him. Moreover, the Commonwealth adduced no evidence to show that the defendant had under his control the means to convert the firearm into operable status. Thus, the Court held that the Commonwealth failed to produce sufficient evidence to convict Layton of violating 18 Pa. C.S. § 6103.

*Layton* affords appellant some comfort because it requires the Commonwealth to prove under the Uniform Firearms Act that a firearm is operable or can readily be made operable by means within a defendant's control. However, upon closer inspection, *Layton* proves to be a two-edged sword. In *Layton*, the Supreme Court stated: "A reasonable fact finder may, of course, infer operability from an object which looks like, feels like, sounds like or is like, a firearm. Such an inference would be reasonable without direct proof of operability. The inference of operability, however, cannot reasonably be made where all the parties agree that the object *was not operable*, supra, 452 Pa. at 498, 307 A.2d at 844 (emphasis in original). Thus, in *Commonwealth v. Yaple*, 238 Pa.Super. 336, 357 A.2d 617

7. Appellant has not contended, either before the lower court or before us, that the Commonwealth failed to produce sufficient evidence that appellant concealed the pistol or that the pistol had a barrel shorter than 12 inches. *See* The Uniform Firearms Act, supra; 18 Pa. C.S. § 6102 which defines "firearm". We will only address the particular claims which appellant has advanced.

8. The Uniform Firearms Act, supra; 18 Pa. C.S. § 6105.

(1976), we found that the complainant's testimony that defendant possessed a gun allowed a reasonable inference of operability, despite lack of direct testimony on this issue. Accordingly, we sustained a defendant's conviction under 18 Pa. C.S. § 6106. In the final analysis, *Yaple,* not *Layton,* controls the instant case. *See also Commonwealth v. Horshaw,* 237 Pa.Super. 76, 346 A.2d 340 (1975).[9] Accordingly, we find sufficient evidence that appellant contravened 18 Pa. C.S. § 6106.

Appellant next contends that the Commonwealth failed to produce sufficient evidence to convict him of making terroristic threats pursuant to 18 Pa. C.S. § 2706. This section provides: "A person is guilty of a misdemeanor of the first degree if he threatens to commit any crime of violence with intent to terrorize another or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience."[10] Specifically, appellant contends that the Commonwealth did not prove beyond a reasonable doubt that appellant had the requisite intent to terrorize the occupants of the bar.

9. In *Horshaw,* we stated that the Commonwealth need not produce evidence of operability until evidence of a firearm's inoperability has been introduced. In the instant case, no evidence of inoperability was introduced. *Cf. Commonwealth v. Lee,* 224 Pa.Super. 17, 302 A.2d 474 (1973) (construing in a similar fashion the Penal Code counterpart to 18 Pa. C.S. § 6106).

10. 18 Pa. C.S. § 2706 derives almost verbatim from § 211.3 of the Model Penal Code. We note that Judge CHALFIN of the Philadelphia County Court of Common Pleas has found that 18 Pa. C.S. § 2706 offends federal constitutional guarantees of due process because it is too vague. Judge CHALFIN concentrated upon that part of 18 Pa. C.S. § 2706 which criminalizes a threat to commit violence made with the intent to cause public inconvenience. *See Commonwealth v. Howell,* 1 D.&C.3d 644 (1976). While appellant raised a due process challenge to § 2706's allegedly vague language in his written post-verdict motions, he has not reiterated this contention in this brief to our Court. Accordingly, we need not address or decide the constitutionality of 18 Pa. C.S. § 2706. *See* Pa. R.A.P. 2115.

*Commonwealth v. White*, 232 Pa.Super. 176, 335 A.2d 436 (1975), offers the only published Pennsylvania appellate court guidance on what evidence the Commonwealth must produce to establish the elements of the crime of making terroristic threats. In *White*, the defendant approached an eight year old girl, placed his hand over her mouth, and carried her to the back of an abandoned house. There, he told the girl that he was going to grab her. The defendant then pinned her against the wall by her shoulders and pulled up her skirt six inches. At this point, a neighbor who knew the girl passed by; defendant fled. Our Court found that the Commonwealth produced sufficient evidence to prove beyond a reasonable doubt that White made terroristic threats. We noted that under 18 Pa. C.S. § 2706, the Commonwealth must prove two elements: (1) a threat to commit a crime of violence, and (2) that such threat was communicated with an intent to terrorize.[11] White's conduct in carrying the young girl to an abandoned home, telling her he was going to grab her, pinning her, and raising her skirt constituted a threat to commit the crime of rape. Moreover, this same pattern of conduct allowed the factfinder to infer reasonably that White possessed the requisite criminal intent.

■ In the instant case, we experience no difficulty in finding that appellant's actions proved beyond a reasonable doubt his intent to terrorize bystanders in Toto's Bar Hotel. Appellant ran into the bar and pointed a firearm at various people. He threatened to assault Ms. Castelli when she attempted to call the police and, in fact, actually pulled her up by her hair from a crouching position. When he left the bar, appellant shouted: "We will be back with more guns." While appellant claims that the bar patrons did not understand his actions to be threatening, the testimony of Ms.

11. This statement of the requisite criminal intent is somewhat incomplete. Under 18 Pa. C.S. § 2706, the Commonwealth may also prove, as an alternative to demonstrating an intent to terrorize, intent to cause evacuation, intent to cause serious public inconvenience, or reckless disregard of the risk of causing terror or serious public inconvenience.

Castelli and Mr. Bechtold amply demonstrates that everyone in the bar was petrified by the actions of the three men and the possibility of gunfire or aggravated assault. Indeed, even the trial transcript's cold print bespeaks an unmistakable climate of fear. Given the pattern of events which occurred in Toto's Bar Hotel between 9:00 and 10:00 p. m., on February 19, 1976, we conclude that appellant acted with the requisite intent to terrorize.[12] Accordingly, we find sufficient evidence to convict appellant of making terroristic threats.

Appellant next contends that there was insufficient evidence to sustain his conviction for recklessly endangering another person pursuant to 18 Pa. C.S. § 2705. This section provides: "A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury."[13] Specifically, appellant contends that the Commonwealth did not prove that he recklessly endangered anyone because it did not demonstrate that he fired gunshots into the bar.

We are totally without the benefit of appellate case law precedent in construing 18 Pa. C.S. § 2705. However, two published decisions of the Court of Common Pleas offer some instruction. In *Commonwealth v. Painter*, 32 Somerset L.J. 115 (1976), the defendant, while driving his car at

12. Appellant has not explicitly argued that the Commonwealth failed to prove that appellant threatened to commit a crime of violence. We note that appellant's threat to return with more guns and his menacing and abusive actions towards Ms. Castelli would suffice to establish this element of the crime of making terroristic threats.

13. Like 18 Pa. C.S. § 2706, § 2705 is also the offspring of the Model Penal Code. See § 211.2. However, the Model Penal Code section contains one line which our legislature deleted in enacting 18 Pa. C.S. § 2705. Section 211.2 of the Model Penal Code adds: "Recklessness and danger shall be presumed where a person knowingly points a firearm at or in the direction of another, whether or not the actor believed the firearm to be loaded." *See also* Tentative Draft No. 8, § 211.2 for commentary on this Model Penal Code section. Toll, *Pa. Crimes Code Annotated*, (1974) and Jarvis, *Pa. Crimes Code and Criminal Law*, do not furnish any insight into our legislature's decision to delete the second line of § 211.2 of the Model Penal Code.

fifty miles per hour, motored alongside another car and pointed a revolver at its driver. The defendant did not shoot his gun. In fact, upon his apprehension minutes later, the police determined that the gun was not loaded. Nevertheless, in *Painter*, the trial court found the defendant guilty of recklessly endangering the other driver. The court focused on the danger which arises when a driver, operating a car at a high speed, is threatened by another person's pistol. For example, the driver may panic and lose control of his automobile. Thus, if a defendant's conduct creates a particular situation replete with potential risks of death or serious bodily injury, then 18 Pa. C.S. § 2705 provides a proper basis for the imposition of criminal liability.

In *Commonwealth v. Stetler*, 36 Lehigh L.J. 525 (1976), a defendant, standing with a group of people on a porch, pointed a gun at a policeman and yelled: "Freeze or I'll blow your head off." The police officer neutralized this threat by taking out his own pistol and commanding the defendant to drop his gun. When the defendant complied, the officer discovered that the defendant's gun was in fact unloaded. Nevertheless, the trial court found sufficient evidence to convict the defendant under 18 Pa. C.S. § 2705. The court emphasized that defendant's conduct in pointing a gun at a police officer invited possible deadly retaliation; the police officer might shoot at the defendant and hit either his target or an innocent passerby.[14]

▋ We believe that the rationale of *Painter* and *Stetler* may be applied in the instant case. Appellant entered a crowded bar and waved a pistol directly at patrons. Regardless of whether his pistol was loaded, appellant's con-

---

**14.** Neither the *Painter* nor *Stetler* court attempted to decide whether the mere act of pointing an unloaded firearm violates 18 Pa. C.S. § 2705. Both courts noted the disparity between 18 Pa. C.S. § 2705 and its Model Penal Code parent. Moreover, both courts observed that the Penal Code had expressly criminalized the act of wantonly or playfully pointing a deadly weapon at someone. *See* The Penal Code, Act of June 24, 1939, P.L. 872, § 716, 18 P.S. § 4716. *See also Commonwealth v. Lowary*, 226 Pa.Super. 115, 313 A.2d 317 (1973). The present Crimes Code contains no specific analogue to this Penal Code provision.

duct created a significant risk that someone, perhaps an owner, bartender, or patron, might retaliate with gunfire. Thus, the Commonwealth proved that appellant recklessly engaged in conduct "which [may have placed] another person in danger of death or serious bodily injury."[15]

Finally, appellant argues that the Commonwealth failed to produce sufficient evidence that he conspired with Hughes and Slick to commit criminal mischief. 18 Pa. C.S. § 903 defines criminal conspiracy as follows: "A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

"(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

"(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime."

While circumstantial evidence may suffice to prove a criminal partnership, " 'the heart of every conspiracy is a *common understanding*, no matter how it came into being'." *Commonwealth v. Yobbagy*, 410 Pa. 172, 177, 188 A.2d 750, 752 (1963) (emphasis in original); *Commonwealth v. Minnich*, 236 Pa.Super. 285, 344 A.2d 525 (1975). Finally, 18 Pa. C.S. § 903(d) requires the Commonwealth to prove the

**15.** We do not rule out the possibility that a defendant who points a pistol at another person may be properly convicted of recklessly endangering that person. In enacting 18 Pa. C.S. § 2705, the legislature omitted a sentence contained in the Model Penal Code which *required* a factfinder to find reckless endangerment from the act of pointing a pistol at another, whether the actor believed the pistol to be loaded or unloaded. See footnote 13, supra. This omission does not necessarily mean that the legislature precluded a determination that waving a *loaded* pistol in public creates an unacceptably high risk of an accidental or deliberate discharge. Furthermore, it may be that a factfinder confronted with testimony that a defendant deliberately used a gun to terrorize others could reasonably infer that the gun was loaded. Because we find that appellant's activities, created *dangerous risks of retaliation and consequent severe physical injury or death*, we need not decide these difficult issues at the present time.

perpetration of an overt act in furtherance of the aims of the conspiracy.

In the instant case, the trial court convicted and sentenced appellant on the charge of conspiring to commit a particular crime: criminal mischief. 18 Pa. C.S. § 3304 defines the act of criminal mischief as follows: "A person is guilty of criminal mischief if he:

"(1) damages tangible property of another intentionally, recklessly, or by negligence in the employment of fire, explosives, or other dangerous means listed in section 3302(a) of this title (relating to causing or risking catastrophe);

"(2) intentionally or recklessly tampers with tangible property of another so as to endanger person or property; or

"(3) intentionally or recklessly causes another to suffer pecuniary loss by deception or threat."

Thus, the Commonwealth must prove that appellant conspired to damage or tamper with personal property of another.

Appellant and his cohorts did not damage or tamper with tangible property of another during their visit to Toto's Bar Hotel between 9:00 p. m. and 10:00 p. m., on February 19, 1976. However, Hughes, and unidentified other persons returned to Toto's Bar Hotel at 11:45 p. m., that night. They kicked the bar door and extensively damaged it. Furthermore, they fired four shots into the bar and damaged its interior. Of utmost importance, however, is the inability of any eyewitness to state that appellant participated in these activities or even reappeared upon the scene. Therefore, we believe that it would require unacceptable conjecture solely upon the basis of appellant's earlier activities to find appellant guilty of conspiring to commit the deeds of criminal mischief which occurred at 11:45 p. m. on February 19, 1976. We cannot find beyond a reasonable doubt that appellant did not abandon Hughes during the almost two hour interim between incidents or that appellant agreed to engage in a further escalation of criminal activity. Because we cannot

base a criminal conviction on surmise alone, we must reverse appellant's judgment of sentence on the charge of conspiring to commit criminal mischief. *See Commonwealth v. Bausewine,* supra; *Commonwealth v. Navarro,* supra.

■ We have reversed appellant's conviction on the charge of conspiring to commit criminal mischief, but have affirmed all other convictions. At the sentencing hearing in the case at bar, the lower court entered sentences on each particular conviction which took effect upon the completion of sentence of a different crime. In short, the lower court apparently integrated its sentencing; a sentence on one charge was linked to and probably influenced the sentence on another charge. Under these circumstances, we must remand for resentencing on the valid convictions without consideration of the invalid conviction. See *Commonwealth v. Lockhart,* 223 Pa.Super. 60, 296 A.2d 883 (1972). Judgment of sentence on charge of conspiracy to commit criminal mischief reversed. All other judgments of sentence vacated and case remanded for resentencing.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.