395 A.2d 1337
**COMMONWEALTH of Pennsylvania**
v.
**Mary F. TROWBRIDGE, Appellant.**
Superior Court of Pennsylvania.
Submitted March 31, 1978.
Decided Dec. 14, 1978.

111

Calvin S. Drayer, Jr., Asst. Public Defender, Norristown, for appellant.

James A. Cunningham, Asst. Dist. Atty., Norristown, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

112

PER CURIAM:

Appellant contends that there was insufficient evidence to convict her of recklessly endangering another person [1] because she had no actual present ability to place others in danger of death or serious bodily injury. Because we agree, we reverse the judgment of sentence and discharge the appellant.

Appellant Mary Trowbridge lived in the last house on Main Street, Spring Mount, Pennsylvania, with her three children and six dogs. Her ex-husband John Trowbridge was also in the house during the events in question. With one important exception to be discussed later, the material facts of the case are not disputed.

Around 2:30 in the morning of June 26, 1976, Officer John Schwemmer of the Lower Frederick Township police was cruising on routine patrol on Main Street. As he approached the turn onto Zieglerville Road, a dog ran out in front of his car, forcing him to stop. Several other dogs then surrounded his vehicle. Concerned for his safety, Schwemmer radioed for assistance. Officer Harold J. Smith responded to the call and arrived in a few minutes. Using his nightstick, he dispersed the dogs, which ran back in the direction of appellant's house.

When appellant heard one of her dogs start to bark, she went outside to investigate the presence of the two police cars parked on Main Street near her driveway. An angry confrontation developed between appellant and Smith. The officers warned her that she could be cited for disorderly conduct and letting her dogs run loose. Appellant resisted an attempt by Officer Smith to arrest her and returned to the house. John Trowbridge observed his ex-wife grab their oldest son's unloaded "Daisy" BB gun from the kitchen.[2] He followed her back outside and waited on

---

1. Act of December 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa.C.S.A. § 2705.

2. On the issue of whether the gun was loaded, both appellant and John Trowbridge testified that their son was not allowed to leave the

the porch while appellant walked onto her driveway, stopped behind her car, raised the gun to her shoulder, and pointed it at the officers in the street. The officers took cover behind their cars and drew their guns. After a tense half minute or so, appellant returned to her house. The officers left the scene, returning the next day to arrest her.

The Commonwealth charged appellant with recklessly endangering another person, making terroristic threats,[3] and possession of instruments of crime.[4] The jury acquitted appellant of the latter two charges but found her guilty of recklessly endangering another person. The lower court denied appellant's motion for arrest of judgment raising the issue of insufficient evidence. This appeal followed.

gun in the house while it was loaded and had never before done so. Mr. Trowbridge further testified that when appellant picked up the BB gun, it made no noise. If the gun had been loaded, he testified, he would have heard the sound of BB pellets rattling around inside the gun.

As to the kind of gun used by appellant, both she and Mr. Trowbridge testified unequivocally that it was a BB gun, about three feet long with a wooden stock and cylindrical barrel, resembling a shotgun. Appellant professed a fear of guns generally, and testified that there were no other guns in the house. The Commonwealth witnesses, the two officers, who stood at some distance in the darkness, testified that the weapon used by appellant looked and sounded "like" a shotgun, but did not identify it as such. There was no attempt by the Commonwealth to procure a warrant to search for the gun.

The Commonwealth strenuously argues in its brief that because it was the verdict winner, we must assume the jury found that appellant used a loaded shotgun. However, the Commonwealth failed to present any evidence that the gun was loaded, failed to procure the gun itself, and failed to have its eyewitnesses identify the weapon as a shotgun. The officers' description of what they saw is consistent with the appearance of the BB gun described by appellant and Mr. Trowbridge. Under these circumstances, we must conclude that the weapon used by appellant was an unloaded BB gun, as the Commonwealth presented no evidence from which the jury could reasonably find otherwise.

3. Act of December 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa.C.S.A. § 2706.

4. Act of December 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa.C.S.A. § 907.

Recklessly endangering another person is a crime of assault under chapter 27 of the Crimes Code.[5] The common law of criminal assault required that the defendant have the actual present ability to inflict a battery or otherwise cause injury.[6] Thus, a conviction for assault under the old Crimes Code,[7] based on the common law, required a present ability to inflict injury, and, if the charge was assault by pointing a revolver and threatening to shoot, the Commonwealth would have to show that the revolver was loaded. *Commonwealth v. White*, 37 Montg.Co.L.Rep. 283 (Pa.C.P.1921).[8]

In its opinion, the court below held that the mere pointing of the gun by appellant was sufficient because the recklessly endangering statute replaced the former crime of "Pointing Deadly Weapons," [9] which read, "[w]hoever playfully or wantonly points . . . a gun, pistol, or other firearm at any person, is guilty of a misdemeanor." Under this statute, the mere pointing of a firearm was the offense, and it was immaterial whether the firearm was loaded. *Commonwealth v. Stokes*, 225 Pa.Super. 411, 311 A.2d 714 (1973).

5. Act of December 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa.C.S.A. §§ 2701–2709.

6. *See* 6A C.J.S. Assault and Battery § 68; LaFave and Scott, *Criminal Law* 610 (1972). This standard for criminal assault was in contradistinction to the common law civil liability for assault, which requires only the victim's reasonable apprehension of an imminent battery and the actor's *apparent* present ability and opportunity to inflict a battery. Prosser, Torts (4th Ed.) 38–39 (1971).

7. Act of June 24, 1939, P.L. 872, § 708; 18 P.S. § 4708.

8. As the states have statutorily codified the crime of assault, some have retained the requirement of actual present ability, while others have required only apparent present ability to inflict injury. *See Casey v. State*, 491 S.W.2d 90 (Tenn.Cr.App.1972) (apparent); *Bass v. State*, 232 So.2d 25 (Fla.App.1970) (apparent); *People v. Gholston*, 164 Colo. 58, 432 P.2d 636 (1967) (actual); *People v. Vaiza*, 244 Cal.App.2d 121, 52 Cal.Rptr. 733 (Cal.App.1966) (actual). In our present Crimes Code, simple assault, 18 Pa.C.S.A. § 2701, requires only apparent ability, i. e., placing the victim in "fear of imminent serious bodily injury." *Id.* § 2701(a)(3).

9. Act of June 24, 1939, P.L. § 716; 18 P.S. § 4716.

The present recklessly endangering statute, under which appellant was convicted, reads as follows: "A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." Thus, the crime requires (1) a mens rea—recklessness, (2) an actus reus—some "conduct," (3) causation—"which places," and (4) the achievement of a particular result—"danger," to another person, of death or serious bodily injury. By requiring the creation of danger, we think it is plain under § 2705 that the mere apparent ability to inflict harm is not sufficient.[10] Danger, and not merely the apprehension of danger, must be created. Therefore, we think that § 2705 retains the common law assault requirement of actual present ability to inflict harm.[11] *See also Commonwealth v. Goosby,* 251 Pa. Super. 326, 380 A.2d 802 (1977) (where defendant pointed gun and pulled trigger, but one *live* cartridge in the gun misfired, there is sufficient evidence to convict for recklessly endangering).

An additional reason in support of this conclusion is what the legislature did *not* say in enacting § 2705. The statute is based upon Section 211.2 of the Model Penal Code, which reads: "A person commits a misdemeanor if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury. Reckless-

10. In addition to the plain words of the statute, resort to principles of statutory construction yields the same conclusion. Criminal statutes must be construed strictly against the Commonwealth. 1 Pa.C.S.A. § 1928(b)(1); *Commonwealth v. Cunningham,* 249 Pa.Super. 219, 375 A.2d 66 (1977). The legislature, by the enactment of the simple assault statute, has shown the ability to write an apparent ability statute when it so intended, (*see* note 8 *supra*) and there are no words in § 2705 regarding the victim's fear, which would indicate an apparent ability standard. In the absence of anything to the contrary in the statute, the common law continues as an aid in statutory construction. *Commonwealth v. Abney,* 195 Pa.Super. 317, 321, 171 A.2d 595 (1961); 22 C.J.S. Criminal Law § 21.

11. In *Commonwealth v. Holguin,* 254 Pa.Super. 295, 385 A.2d 1346 (1978) we expressly left open the issue of whether the mere pointing of an unloaded gun, without more, violates § 2705. We now hold that it does not.

ness and *danger shall be presumed* where a person knowingly points a firearm at or in the direction of another, *whether or not the actor believed the firearm to be loaded."* [12] We note that the legislature adopted the first sentence of this Section as § 2705 verbatim, except for grading. However, the second sentence of § 211.2 which would impose criminal liability for pointing an unloaded weapon [13] was not enacted. Thus, it must be true that the legislature did not intend that the mere pointing of an unloaded weapon should give rise to criminal liability, except as a simple assault.[14]

■ We now turn to an application of these principles to the facts of the case at bar. When appellant pointed her BB gun at officers Smith and Schwemmer, it was unloaded. As we have indicated, this in itself does not create a danger of death or serious bodily harm, and thus no violation of § 2705.[15] The judge below erred in placing any emphasis on

**12.** 10 Uniform Laws Annotated 538–39 (1974) (emphasis added).

**13.** If it had been enacted, *this* language would have been the substitute for the former "Pointing Deadly Weapons" statute, upon which the court below based its decision.

**14.** *Accord, Commonwealth v. Painter,* 32 Somerset 115, 119 (Pa.C.P. 1976) (it appears that the mere pointing of an unloaded gun, without more, does not violate § 2705). From this discussion we do not mean to say that there are no circumstances under which the pointing of an unloaded gun can create a danger of death or serious bodily injury, albeit not from the projectile which would be fired if it were loaded. We think such a danger could exist where the actor points an unloaded gun and the resulting fear or apprehension of danger itself creates an actual danger of death or serious bodily harm to others, such as where a gun is pointed at a person driving a passenger-filled car at fifty miles per hour on a public highway, since the requisite danger comes from the loss of vehicular control in such a panic situation. *See Painter, supra. See also Commonwealth v. Holguin,* 254 Pa.Super. 295, 385 A.2d 1346 (1978) (pointing pistol into crowded bar creates significant risk that someone may retaliate with gunfire).

**15.** Moreover, we do not think that under the circumstances of this case the mere pointing of the gun itself placed any other person in danger of death or serious bodily injury, as in *Painter,* note 14 *supra.* When the officers realized that appellant was pointing a gun at them, they were alone on a deserted street in the middle of the night and standing behind their cars. There was no danger to vehicular traffic or pedestrians, and no crowd of people to panic. As in *Common-*

the former "Pointing Deadly Weapons" statute and the cases decided thereunder. This statute is no longer part of our Crimes Code, and the legislature did not enact § 2705 as a replacement for it.[16] In fact, Section 211.2 of the Model Penal Code, which would have been a logical replacement for the "Pointing Deadly Weapons" statute, was consciously avoided by the legislature.[17] Because appellant did not place the police officers in danger of death or serious bodily harm, the Commonwealth failed to prove an essential element of the recklessly endangering statute. Therefore, we reverse the judgment of sentence and discharge the appellant.

PRICE and VAN der VOORT, JJ., dissent.

HOFFMAN, J., did not participate in the consideration or decision of this case.

wealth v. Stettler, 36 Lehigh L.J. 525 (Pa.C.P.1976), the judge below stated in his opinion that John Trowbridge was endangered by appellant's conduct, since he stood behind appellant, in the line of the officers' potential fire, not visible to the police in the darkness. However, appellant in this case was charged only with recklessly endangering officers Smith and Schwemmer, and was not charged with recklessly endangering John Trowbridge.

16. Commonwealth v. Holguin, supra, 254 Pa.Super. at 307 n. 14, 385 A.2d at 1353 n. 14.

17. As we said in Commonwealth v. Holguin, supra : "This omission does not necessarily mean that the legislature precluded a determination that waving a loaded pistol in public creates an unacceptably high risk of an accidental or deliberate discharge." Id., 254 Pa.Super. at 308 n. 15, 385 A.2d at 1353 n. 15 (emphasis in original). Here, however, appellant's gun was not loaded, and thus there was no danger of discharge. Cf. Commonwealth v. Goosby, supra, where there was a danger of discharge from the one live cartridge in the gun used, held to constitute sufficient evidence to sustain conviction or recklessly endangering.