429 A.2d 709

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Joe Allen BAKER.**

Superior Court of Pennsylvania.

Argued March 3, 1980.

Filed May 15, 1981.

C. Joseph Rehkamp, District Attorney, New Bloomfield, for Commonwealth, appellant.

Daniel W. Stern, New Bloomfield, for appellee.

Before CERCONE, President Judge, and WATKINS and MONTGOMERY, JJ.

CERCONE, President Judge:

This is an appeal by the Commonwealth from the order of the Court of Common Pleas in Perry County which granted the defendant's motion for a demurrer. Finding the Commonwealth's contentions to be without merit, we affirm the

decision of the court below for the reasons stated by the Honorable Keith B. Quigley, President Judge, in his opinion of August 29, 1979.

■ Our Supreme Court has recently held that in order "[t]o avoid a demurrer in a criminal prosecution, the Commonwealth must come forward with evidence which establishes beyond a reasonable doubt each element of the crime charged." *Commonwealth v. Mason*, 483 Pa. 409, 413, 397 A.2d 408, 411 (1979). The standards applied by our courts in ruling on a defendant's demurrer is whether the evidence, when viewed in the light most favorable to the Commonwealth, is sufficient to prove guilt beyond a reasonable doubt. *Commonwealth v. Smith*, 262 Pa.Super. 258, 396 A.2d 744 (1978); *Commonwealth v. Hunt*, 256 Pa.Super. 140, 389 A.2d 640 (1978); *Commonwealth v. Kaulback*, 256 Pa.Super. 13, 389 A.2d 152 (1978). With this perspective in mind, the facts in the instant appeal are as follows:

■ The defendant-appellee, Mr. Baker, was charged with Recklessly Endangering Another Person in violation of the Pennsylvania Crimes Code, 18 Pa.C.S. § 2705. This charge arose out of a "late night fracas" at a bar in Sherman's Dale, Pennsylvania. Shortly after 12:00 A.M. on December 19, 1978, Mr. Baker and two friends, one male, and one female, walked into the bar and ordered a six pack of beer. Three men sitting at the bar made remarks about the length of Mr. Baker's hair and the type of beer he ordered. An oral argument ensued which escalated into a physical brawl starting inside the bar and continuing on the outside. In the course of the fight, one of Mr. Baker's opponents picked up a two-by-four piece of lumber, slammed the end of it on the ground and told Mr. Baker to leave. Mr. Baker went to his truck, retrieved a gun and pointed it at his opponents. Unknown to all except Mr. Baker, the gun was not loaded. Mr. Baker then put his gun away, told his friends to get in the truck, received another six-pack of beer from the owner of the bar to replace the one that had been broken during the fight, and left.

The sole issue involved here is whether the actual present ability to inflict death or seriously bodily injury which is required by *Commonwealth v. Trowbridge*, 261 Pa.Super. 109, 395 A.2d 1337 (1978) has been shown by the Commonwealth in the instant case. In *Trowbridge* we ruled that mere apparent ability to inflict harm was not enough to support a conviction for recklessly endangering. *Id.*, 261 Pa.Super. at 115 n.11, 395 A.2d at 1340 n.11. Thus, we there held that the pointing of an unloaded B.B. gun at two police officers was not sufficient for a conviction unless the circumstances surrounding the defendant's conduct were such that the alleged victims were nevertheless endangered despite the fact that the gun was unloaded. *Id.*, 261 Pa.Super. at 116 nn. 14 & 15, 395 A.2d at 1341 nn. 14 & 15. For example, *Trowbridge* cites us to *Commonwealth v. Painter*, 32 Sommerset 115, 119 (Pa.C.P.1975) for the proposition that pointing an unloaded gun "at a person driving a passenger-filled car at fifty miles per hour on a public highway [is sufficient for a conviction under § 2705] since the requisite danger comes from the loss of vehicular control in such a panic situation." 261 Pa.Super. at 116 n.14, 395 A.2d at 1341 n.14.

Another circumstance in which a reaction to the accused's conduct could supply the element of actual danger of harm is where the pointing of an unloaded gun could trigger retaliatory gunfire. One such case is *Commonwealth v. Stetler [Stettler]*, 36 Lehigh L.J. 525 (Pa.C.P.1976) in which the defendant pointed an unloaded shotgun at a policeman with defendant's wife, mother and another man standing nearby. The officer then pulled out his revolver and told the defendant to drop his weapon. The defendant complied and was placed under arrest. Although the shotgun was unloaded, the *Stetler* court nonetheless convicted the defendant for recklessly endangering because the officer did not know it was unloaded and very well might have fired his own gun thereby putting the people nearby in danger of harm. The second retaliatory gunfire case which was cited by *Trowbridge*, 261 Pa.Super. at 116 n. 14, 395 A.2d at 1341

n. 14, is *Commonwealth v. Holguin,* 254 Pa.Super. 295, 385 A.2d 1346 (1978), in which the pointing of an unloaded pistol at people in a crowded bar was held to create an actual danger of harm because a significant risk was created that someone inside the bar, such as the owner, bartender, or even a patron, would actually retaliate with gunfire, thus endangering the other people in the bar.

In large measure *Holguin, Stetler, Painter* and *Trowbridge* are varying points along a calibrated line of causation. In its essence, the issue comes down to a question of degrees of foreseeability. The dividing line, and therefore the key to our inquiry, should be whether the accused knew or reasonably should have known that his conduct might produce a life endangering response by the victim or others coming to his aid. In the case at bar, the circumstances surrounding Mr. Baker's actions were not so inherently dangerous that death or serious bodily injury would be a reasonably foreseeable result.[1] Of course, Mr. Baker's antagonists were probably fearful they would be seriously injured. Mr. Baker undoubtedly intended them to be. But, such conduct and its calculated result, sufficient as they may be to establish simple assault, fall short of proving recklessly endangering.[2]

The Commonwealth, through its brief, has resourcefully exercised its imagination in an attempt to illustrate the purported danger of death or serious injury in the instant case:

> [T]here was a potential for death or serious bodily injury to Mr. Wheeler, Mr. Mattern, and Mr. Gehr, which resulted from their fear and apprehension of the gun which they did not know to be unloaded. The gun, even unloaded, could have caused serious injuries or death had it been

1. After *Trowbridge,* it is now the law that the person put in danger of actual harm must be one of the individuals whom the accused is charged with endangering. 261 Pa.Super. at 116 n. 15, 395 A.2d at 1341 n. 15.

2. *See* Crimes Code, 18 Pa.C.S. § 2701(a)(3) (1973) and *Commonwealth v. Gouse,* 287 Pa.Super. 120, 429 A.2d 1129.

used as a club. There was certainly danger of a panic reaction by one or all three of the alleged victims. For instance, one of the three *could* have had a gun and retaliated with gunfire. There was evidence of a two-by-four used for protection; it *could* have been thrown and *could* have seriously injured or killed one of those present. The episode took place in the parking lot of a bar which was along a state highway. Although it occurred after midnight, and there was no testimony as to the amount of traffic, it was *possible* that a vehicle could have been driven past the bar or into its parking lot and one or more of the men *could* have received serious injuries if they had run into its path while trying to escape from Mr. Baker's gun. (Emphases added.)

The Commonwealth's explanations of how the circumstances could possibly have created a danger of actual harm are not such that Mr. Baker should have reasonably forseen their occurrence. The remote nature of the Commonwealth's asserted possible sequence of events indicates the unreasonableness of requiring an actor to foresee such unusual results. In the present case we do not have a car being driven down a highway at fifty miles per hour as we did in *Painter*, nor do we have an unloaded gun being pointed at an armed police officer with innocent people standing nearby as we did in *Stetler*, nor do we have the unique situation of a gun being terroristically pointed at patrons inside a crowded bar as we did in *Holguin*.[3] What we do have is a fracas between only a handful of individuals in a parking lot in the middle of the night with no other circumstances indicating a significant risk of danger. We, therefore, find the analysis of the trial court to be particularly sound and persuasive:

In the present case, the defendant allegedly pointed the gun at the men while all the participants in the fracas were standing in the parking lot of the [bar]. The Com-

3. In *Holguin*, it was not clear whether the gun was loaded at the time it was brandished; however, this Court there indicated that it was reasonable to infer that the gun was loaded from the fact that it was deliberately used to terrorize others. 254 Pa.Super. at 308 n. 15, 385 A.2d at 1353 n. 15.

monwealth produced no evidence of any dangerous condition in the parking lot which could have endangered the victim. Furthermore, the incident occurred late at night when the traffic in the lot and on the adjacent highway was at a minimum. * * * The *Trowbridge* decision placed a heavy burden on the Commonwealth to prove actual present ability to inflict death or serious bodily harm by showing either that the gun was loaded or the surrounding circumstances were inherently dangerous. In light of this decision, we were constrained to rule that the Commonwealth had failed to produce evidence which could prove beyond a reasonable doubt that the defendant recklessly endangered the victims when he pointed the unloaded weapon at them. The defendant's demurrer was, therefore, sustained and the defendant discharged.

In conclusion, we hold that the lower court properly granted Mr. Baker's demurrer to the evidence and we, therefore, affirm the well-founded decision of the court below.

Affirmed.

WATKINS, J., dissents.