## Commonwealth v. Stefaniak

*Frederick L. John III, assistant district attorney,* for the commonwealth.
*Robert A. Cinpinski,* for defendant.

HOUSE, *P.J.,* September 14, 1987—Before the court is defendant's pre-trial motion to quash the district attorney's information which charges defendant, inter alia, with the offenses of arson endangering persons and recklessly endangering another person. The commonwealth has amended the original information to allege that the victim in each count was Kiskiminetas Township Fire Department.

The commonwealth and defendant have entered into a stipulation of facts to be utilized by the court in determining the issue before it and said stipulation is attached to and made a part of this opinion.

## STIPULATION

Defendant, Steven Paul Stefaniak, was arrested as a result of an incident which occurred in Kiskiminetas Township, Armstrong County, Pa. and subsequent to a preliminary hearing, charges of arson endangering persons, recklessly endangering another person, as well as disorderly conduct were bound over to court. Motions have been filed to quash the district attorney's indictment as the same concerns the charge of arson and recklessly endangering another person. Said charges stem from an incident in which defendant is alleged to have in-

tentionally set his vehicle on fire outside his home. The basis for both the arson endangering person as well as the recklessly endangering another person stems from testimony concerning various events that "could have occurred" to the firemen while they were extinguishing the fire, while it is clear that nothing out of the ordinary occurred nor were any of the firemen who extinguished the blaze actually harmed.

The events that "could have occurred" as indicated by the fire chief for Kiskiminetas Township were those risks that would be present in the extinguishing of any vehicle fire. These include potential explosions from a process known as boiling liquid expanding vapor explosion from fuel tanks, battery explosions, energy absorbing bumpers, or hollow sealed propeller shafts; however, the commonwealth has no evidence to dispute defendant's claim that there was no battery, gas, or gas cap in or on said vehicle.

## ISSUE

As a matter of law, may charges of arson endangering persons and recklessly endangering another person be sustained solely upon evidence that a fire company was called to the scene of the fire, together with evidence as to what could have, but had not, occurred which would have, but had not, actually endangered or threatened to cause death or bodily injury?

## DISCUSSION

As can be seen from the attached stipulation, this is a case where defendant intentionally set his vehicle afire and where a fire company was called to the

scene and extinguished the fire without actual incident or injury.

We start our analysis with the observation that one cannot be convicted of arson where one intentionally burns one's own vehicle (or even the vehicle of another which is valued less than $5000), provided it is *not* done for the purpose of collecting insurance for the loss. Since there is no evidence that the vehicle was worth more than $5000 or that insurance was involved in the case at bar, defendant could not have been successfully charged and convicted of arson endangering property or reckless burning.

However, solely because a fire company was called to the scene of the fire, defendant has been charged with arson endangering persons under the Crimes Code (18 P.S. §3301(a)) which provides:

"A person commits a felony of the first degree if he intentionally starts a fire or causes an explosion . . . whether on his own property or that of another, and if: (i) he thereby recklessly places another person in danger of death or bodily injury, including but not limited to a firefighter, police officer or other person ostensibly engaged in fighting the fire; . . . ."

It is the commonwealth's position that anytime a fire company is called to the scene, the person who set the fire is chargeable under the above section even though no firefighter was actually injured or threatened with actual injury, provided the commonwealth is able to supply evidence as to what events *might* (but did not) occur which would have or could have resulted in placing a firefighter in danger of death or bodily injury.

It is defendant's position that, in order to sustain such a charge, not only must the commonwealth establish that the fire had the potential for endangering the life or person of a firefighter, but the com-

monwealth must also establish that some event occurred other than the mere fire itself, which, in fact, did harm or endanger the life or person of a firefighter.

Interestingly, subsection (i) quoted above was not part of the arson section until 1982 when the Legislature adopted an amendment adding that language. Thus, prior to 1982, an arson endangering persons normally referred only to persons in or about property when it was deliberately fired. In an effort to determine the intentions of the Legislature in enacting the 1982 amendment, this court researched the legislative history of the enactment. Surprisingly, there was no floor debate or comment whatsoever, in either the Senate or the House, in connection with this enactment.

Because of this lack of legislative history, we are compelled to analyze the legislative intent and the effect of the language used solely by resort to the principles of statutory construction and by reference to appellate decisions construing similar statutory language.

Obviously, we are here dealing with a penal statute and, as such, it must be strictly construed. Strict construction does not require that the words of a criminal statute be given the narrowest meaning or that the lawmaker's evident intent be disregarded, *Commonwealth v. Duncan*, 456 Pa. 495, 321 A.2d 917 (1974), but nonetheless, any ambiguity must be resolved in favor of the accused. *Commonwealth v. Cluck*, 252 Pa. Super. 228, 381 A.2d 472 (1971); *Commonwealth v. Cunningham*, 248 Pa. Super. 219, 375 A.2d 66 (1977).

The Statutory Construction Act of 1972 (1 Pa.C.S. §1501 et seq.) provides that, where the words of the statute are not explicit, the intention of

the General Assembly may be ascertained by a consideration of the following factors:

"(1) The occasion and necessity for the statute.

"(2) The circumstances under which it was enacted.

"(3) The mischief to be remedied.

"(4) The object to be obtained.

"(5) The former law, if any, including other statutes upon the same or similar subject.

"(6) The consequences of a particular interpretation.

"(7) The contemporaneous legislative history.

"(8) Legislative and administrative interpretations of such statute." (section 1921).

The aforesaid Statutory Construction Act in section 1922 also creates certain presumptions to be used in ascertaining the intention of the General Assembly in enactment of a statute:

"(1) The General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.

"(2) The General Assembly intends the entire statute to be effective and certain.

"(3) The General Assembly does not intend to violate the Constitution of the United States or of this commonwealth.

"(4) When a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language.

"(5) The General Assembly intends to favor the public interest as against any private interest."

As noted above, there is no legislative history on the statute in question, although it obviously was enacted out of a legitimate, commendable concern for the lives and safety of firefighters throughout the

commonwealth, particularly in circumstances where they are called upon to fight fires of incendiary origin. Beyond that, however, the provisions of section 1921 are of little help in interpreting what the General Assembly intended by this amendment to the arson section of the Crimes Code.

However, the presumptions raised by section 1922 do provide some assistance in construing the legislative intent; specifically section 1922(1) and (4). Thus, we are not to presume an unreasonable result and we are to assume that, if similar language has been construed by a court of last resort, the General Assembly intended that the same construction be placed upon any subsequent use of the same or similar language.

In its 1972 enactment of the Crimes Code, the General Assembly created, in section 2705 (18 Pa.C.S. §2705) an offense known as recklessly endangering another person (REAP) and provided that: "A person commits REAP if he *recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.*" Since the arson amendment of 1982 uses language remarkably similar to that emphasized above, to-wit: *"recklessly places another person in danger of death or bodily injury,"* it is instructive to examine the appellate decisions regarding the language used in creating the REAP offense.

In *Commonwealth v. Trowbridge,* 261 Pa. Super. 109, 395 A.2d 1337 (1978), the Superior Court held that REAP is a crime of assault and that the statute creating the REAP offense retained the common law assault requirement that the actor must be shown to have the actual present ability to inflict harm; that is, danger and not merely the apprehension of danger must be created and the mere apparent ability to inflict harm is not sufficient. Thus, in

*Commonwealth v. Smith,* 292 Pa. Super. 443, 437 A.2d 757 (1981), the Superior Court held that it is not enough for the commonwealth to show that defendant threatened to shoot a gun *unless* the commonwealth also shows that the gun was loaded. And even where defendant has actually discharged a loaded weapon, he cannot be convicted of REAP unless it be shown that he fired the weapon at the alleged victim or anyone else. *Commonwealth v. Smith,* 301 Pa. Super. 142, 447 A.2d 282 (1982).

*Commonwealth v. Baker,* 287 Pa. Super. 39, 429 A.2d 709 (1981) not only reaffirms the holding of *Trowbridge,* supra, but recognizes that, under proper circumstances, a victim's *reaction* to defendant's conduct could supply the element of actual danger or harm. To the same effect is *Commonwealth v. Gouse,* 287 Pa. Super. 120, 429 A.2d 1129 (1981). And in *Commonwealth v. Holguin,* 254 Pa. Super. 295, 385 A.2d 1346 (1978), it was held that defendant could be convicted of REAP even in absence of evidence his gun was loaded when he waved it around in a crowded bar while making verbal threats. In *Holguin,* supra, the rationale for the holding was that defendant's conduct could well have prompted the owner, bartender or patrons to retaliate with actual gunfire.

Most, if not all, of the above decisions were published before the Legislature enacted the 1982 amendment to the Crimes Code arson section. Even though the above cases were all decided by the Superior Court of Pennsylvania and even though the Superior Court is not a court of last resort, the General Assembly must be held to have been aware of those decisions and to have been aware that similar language in a subsequent statute probably would be given a similar construction in the absence of a con-

trary statutory direction or higher appellate decision.

In fact, this court has been unable to find any decision of any courts of the commonwealth construing the language of the arson provision or touching upon the issue here presented.

Relying upon the marked similarity between the language of the REAP section and the language of the arson section and relying, further, upon the decision construing the REAP section, we conclude that evidence of the mere presence of firefighters at the scene of an incendiary fire and the mere apprehension of possible, but not acutal, dangerous events would not be sufficient evidence to establish defendant's guilt of the offense of arson endangering persons.

We reach this conclusion with some reluctance, because this court recognizes that the object of this legislation was to provide for the protection of firefighters actively engaged in fighting fires. Who among us does not admire those persons who routinely risk life and limb in the service of their neighbors? Indeed, it is a rare citizen who does not, at some time in his/her lifetime, require the services or assistance of a firefighting organization.

However, it was well within the power and authority of the General Assembly to make it an offense to set any fire to which firefighters were summoned or came upon the scene. The General Assembly did not do that and, instead, chose to use language which not only does not explicitly describe the offense but which previously has been construed in other contexts to require evidence of actual danger in order to sustain a conviction.

The Legislature could have made the mere presence of firefighters at the scene of an incendiary fire per se evidence of that recklessness which would

subject the arsonist to the sanctions of this section. Instead, the Legislature, knowing that "placing in danger" had acquired a long-standing construction by the appellate courts, chose to couch its amendment in the terms of "placing in danger."

We hold therefore that, under the facts as stipulated, defendant in the case at bar could not, as a matter of law, be convicted of arson endangering persons due to the absence of any evidence of an actual danger or actual harm to a firefighter.

The court is mindful that any fire, large or small, presents at least some danger to persons in its vicinity. But it is clear from the appellate decisions that something more must be shown and that "something" is that there be some actual harm resulting from the fire to a firefighter or some additional hazard inherent in and issuing from the fire so as to create an actual, as opposed to a theoretical, danger to the firefighters.

As was pointed out in the well reasoned opinion of the Bedford County Court in *Commonwealth v. Martinez,* 12 D.&.C.3d 780 (1980), recklessness is an essential element of both REAP and arson endangering persons: "A reckless person is one who, being aware of a risk created by his actions, nonetheless disregards the risk, and that disregard on his part amounts to a gross deviation from the standard of care a reasonable person would observe."

In *Martinez,* supra, defendant, an adult, had detonated a hand grenade simulator in a hallway of a high school while school was in session. The simulator was marked "dangerous" and its detonation physically damaged the hallway area and, significantly, permanently damaged the hearing of the high school principal who was 30 feet away at the time of the blast. On those facts the Bedford Court quite properly held that a prima facie case of REAP

had been established and cited *Trowbridge*, supra, and *Holguin* supra.

The case at bar is readily distinguishable from *Martinez*, supra, in that here there was no actual injury and no evidence is available to establish that an actual danger of injury existed at the scene of this fire.

Based upon all of the foregoing, this court concludes that the commonwealth has failed to make out a prima facie case against defendant either as to arson endangering persons or as to REAP. Accordingly, the motion to quash will be granted.

## ORDER

And now, September 14, 1987, after the filing of a stipulation of facts, and upon due consideration, and for the reasons contained in the annexed opinion: now, therefore, defendant's motion to quash is granted and it is ordered, adjudged and decreed that the district attorney's information in the above matter be and is hereby quashed insofar as it charges defendant with the offenses of arson endangering persons and recklessly endangering another person.