Dominic BUZZELL and Doris Buzzell,
husband and wife, Plaintiffs
and Appellants,

v.

Dionisio T. LIBI, Dionisio T. Libi, P.C.,
and St. Joseph's Hospital, Defendants
and Appellees.

Civ. No. 10371.

Supreme Court of North Dakota.

Oct. 31, 1983.

---

* Justice WM. L. PAULSON served as a Surrogate Justice for this case pursuant to Section

27–17–03, N.D.C.C.

Arne F. Boyum, Jr., Rolla, for plaintiffs and appellants.

Lance Schreiner, of Zuger & Bucklin, Bismarck, for defendants and appellees Dionisio T. Libi and Dionisio T. Libi, P.C.

Richard H. McGee II, of McGee, Hankla, Backes & Wheeler, Minot, for defendant and appellee St. Joseph's Hosp.

VANDE WALLE, Justice.

Dominic and Doris Buzzell appeal from the amended judgment dated October 4, 1982, dismissing their action against St. Joseph's Hospital, and from the judgment dated November 9, 1982, dismissing their action against Dionisio T. Libi and Dionisio T. Libi, P.C. We affirm in part, but remand for a determination by the trial court on the Buzzells' objections to costs and disbursements taxed as part of the November 9, 1982, judgment.

Mrs. Buzzell has a lengthy history of ear problems, and had been treated by Dr. Libi on numerous occasions prior to 1978. During the spring and summer of 1978, Dr. Libi treated Mrs. Buzzell for pain and drainage in her right ear. On September 25, 1978, Dr. Libi observed a small wire protruding through the right eardrum, as well as cholesteatoma[1] debris present in the ear. On the basis of these observations, Dr. Libi recommended surgery, which was scheduled for October 31, 1978.

Mrs. Buzzell checked into St. Joseph's Hospital on October 30, and signed a surgery consent form which had been prepared by a nurse on the hospital staff. This consent form erroneously listed the procedure to be performed as "Left Exploratory tympanotomy, Possible mastoidectomy." While preparing for the surgery, Dr. Libi noticed that the consent form erroneously authorized left ear surgery, rather than right ear surgery. Dr. Libi proceeded to remove the wire from Mrs. Buzzell's right eardrum, then used a surgical microscope to look for cholesteatoma through the hole created by the wire. Dr. Libi found no evidence of cholesteatoma in the right ear, and decided against any further surgical procedures on that ear.

Dr. Libi then decided to examine Mrs. Buzzell's left ear, although he had never discussed surgery on the left ear with Mrs. Buzzell and was aware that the word "left" on the consent form was a mistake. Upon examining Mrs. Buzzell's left ear with the surgical microscope, Dr. Libi discovered a marginal perforation of the eardrum. Believing that a marginal perforation of the eardrum suggested the possibility of cholesteatoma in that ear, Dr. Libi proceeded to perform an exploratory tympanotomy and tympanoplasty.

Following surgery, Dr. Libi located Mr. Buzzell and informed him of the erroneous consent form and the procedures which had been performed. At Mr. Buzzell's request, Dr. Libi did not inform Mrs. Buzzell of the mistake on the form, but he did explain to Mrs. Buzzell the surgical procedures which he had performed on both ears.

Although Mrs. Buzzell initially expressed satisfaction with the results of the surgery, she became upset when informed by her husband in December of 1978 that there had been an error made on the consent form which she had signed. She thereafter sought treatment from ear, nose, and throat specialists in Williston, North Dakota, and Seattle, Washington. In October of 1979, Dr. Roger Lindeman of Seattle discovered evidence of cholesteatoma in Mrs. Buzzell's right ear, and he performed a tympanoplasty, mastoidectomy, and ossicular reconstruction.

Dominic and Doris Buzzell brought this action against Dr. Libi, his professional corporation, and St. Joseph's Hospital, alleging malpractice based upon her treatment in October of 1978. The action was tried to the court without a jury, and at the completion of trial the court dismissed the claims against St. Joseph's Hospital. The court, by memorandum opinion, dismissed the action against Dr. Libi and his professional corporation. An amended judgment dismissing the action as to St. Joseph's and awarding St. Joseph's costs in the amount of $3,257 was entered on October 4, 1982. Judgment dismissing the action as to Dr. Libi and his professional corporation, and awarding costs in the amount of $11,955.85, was entered on November 9, 1982. The Buzzells appeal from both judgments.

---

1. Cholesteatoma is a tumor-like mass, most frequently occurring in the middle ear. The various experts who testified in this case described cholesteatoma as a "bone-eating growth," which, if left unattended, could be fatal.

The following issues are presented by this appeal:

1. Were the findings of fact made by the trial court clearly erroneous?
2. Was Dr. Libi negligent in terminating the right-ear surgery when examination of the middle ear failed to reveal the existence of cholesteatoma?
3. Was Dr. Libi negligent in performing surgery upon Mrs. Buzzell's left ear?
4. Did the Buzzells receive a fair and impartial trial?
5. Were the costs taxed in favor of Dr. Libi and his professional corporation contrary to law or excessive?

I

The Buzzells have challenged various findings of fact made by the trial court. They assert that no less than 26 of the court's 28 findings of fact are clearly erroneous. Rule 52(a), North Dakota Rules of Civil Procedure.

The trial court was presented with much conflicting evidence, including conflicting expert testimony. We have made it clear in the past that we will not re-examine findings of fact decided by the trial court upon conflicting evidence. *Kasper v. Provident Life Insurance Co.,* 285 N.W.2d 548 (N.D.1979); *Schmidt v. Plains Electric, Inc.,* 281 N.W.2d 794 (N.D.1979); *Dickinson Education Association v. Dickinson Public School District No. 1,* 252 N.W.2d 205 (N.D. 1977); *Eakman v. Robb,* 237 N.W.2d 423 (N.D.1975). Nor will we appraise the credibility of expert witnesses. *Schmidt v. Plains Electric, supra; Foremost Insurance Co. v. Rollohome Corp.,* 221 N.W.2d 722 (N.D.1974). These are properly functions of the trial court, and we will not substitute our judgment for that of the trial court when there is testimony to support its findings. *Gulden v. Sloan,* 311 N.W.2d 568 (N.D.1981).

We have carefully examined the record in this case in light of the alleged errors in the findings of fact, and conclude that there is ample testimony to support the findings of the trial court.

II

The Buzzells contend that Dr. Libi was negligent in failing to perform invasive surgery on Mrs. Buzzell's right ear. They argue that Mrs. Buzzell's right ear contained a cholesteatoma growth at the time of the surgery by Dr. Libi, and that his negligent failure to more fully examine her middle ear caused the condition to worsen, necessitating surgery by Dr. Lindeman in October 1979.

The trial court found that Dr. Libi was not negligent in failing to perform invasive surgery on Mrs. Buzzell's right ear. There was expert testimony that it was medically appropriate for Dr. Libi to not perform the planned invasive surgery when he was unable to detect evidence of frank cholesteatoma in the middle ear through the surgical microscope. There was also testimony that two otolaryngologists who examined Mrs. Buzzell's right ear between October 1978 and October 1979, Dr. Cheng in Williston and Dr. Lindeman in Seattle, did not find any evidence of cholesteatoma during that period of time. In October 1979, Dr. Lindeman did find evidence of cholesteatoma in the right ear, and subsequently performed surgery on Mrs. Buzzell. Dr. Lindeman testified, by deposition, that in his opinion it was possible that the cholesteatoma which he discovered in Mrs. Buzzell's right ear could have developed within the one-year period between October 1978 and October 1979. Two other expert witnesses testified at trial that the cholesteatoma could have developed within this one-year period.

On the basis of this evidence, the trial court concluded that Dr. Libi was not negligent in deciding to not perform invasive surgery when he was unable to find evidence of frank cholesteatoma within the middle ear. The court also concluded that Dr. Libi was not negligent in failing to find evidence of frank cholesteatoma at that time. The findings and conclusions of the trial court in this regard are amply supported by the record.

III

The Buzzells also contend that Dr. Libi was negligent in performing surgery on

Mrs. Buzzell's left ear when she had not consented to surgery on that ear. Although Mrs. Buzzell signed a consent form specifying left-ear surgery, Dr. Libi admitted that he had never discussed left-ear surgery with Mrs. Buzzell. Dr. Libi also admitted that at the time of surgery he realized that there had been a "mix-up" on the consent form and that he knew Mrs. Buzzell had come to the hospital to have surgery on her right ear. Notwithstanding his knowledge of the circumstances, Dr. Libi performed surgery on Mrs. Buzzell's left ear.

The Buzzells do not contend that Dr. Libi was negligent in the actual performance of the surgery; nor do they contend that the surgery performed was an inappropriate manner of correcting the problems in her left ear. The record fully supports the trial court's conclusion that Dr. Libi's surgery on Mrs. Buzzell's left ear was performed in a manner which met or exceeded the standard of care for specialists in ear, nose, and throat surgery.

The issue presented on appeal is whether Dr. Libi was negligent when he decided to proceed with major surgery on Mrs. Buzzell's left ear when he was fully aware that she had not been advised of the attendant risks and had not consented thereto. It is clear that the erroneous consent form could in no way be viewed as a valid informed consent by Mrs. Buzzell for left-ear surgery when she had never discussed left-ear surgery with Dr. Libi and had never been advised of the risks involved. See *Sard v. Hardy,* 281 Md. 432, 379 A.2d 1014, n. 3 (1977). Neither does this case fit within the emergency exception to the informed-consent doctrine, which provides that consent is not necessary when the patient is unconscious or otherwise incapable of consenting, and harm from a failure to treat is imminent and outweighs any harm threatened by the proposed treatment. *Canterbury v. Spence,* 464 F.2d 772 (D.C.Cir.), *cert. denied,* 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518

(1972). Dr. Libi does not contend that there was risk of imminent harm from the marginal perforation in Mrs. Bussell's left eardrum.[2]

On the basis of the record in this case, we conclude that Dr. Libi failed to conform to the acceptable standard of care when he performed surgery on Mrs. Buzzell's left ear without her consent. The root premise in informed-consent cases is the fundamental concept stated by Justice Cardozo: "Every human being of adult years and sound mind has a right to determine what shall be done with his own body." *Schloendorff v. Society of New York Hospital,* 211 N.Y. 125, 129, 105 N.E. 92, 93 (1914), *overruled, Bing v. Thunig,* 2 N.Y.2d 656, 163 N.Y.S.2d 3, 143 N.E.2d 3 (1957). Dr. Libi violated this most basic precept by performing surgery on a patient without her consent.

■ Our review of the case does not end here, however. In addition to establishing breach of the physician's duty of disclosure, it is incumbent upon the plaintiff in an informed-consent case to establish the remaining elements of the tort action: causation and injury. *Canterbury v. Spence, supra.* A causal connection exists only when adequate disclosure would have caused the patient to withhold consent to the particular course of treatment or procedure. *Canterbury v. Spence, supra; Shetter v. Rochelle,* 2 Ariz.App. 358, 409 P.2d 74 (1965), *modified on other grounds,* 2 Ariz. App. 607, 411 P.2d 45 (1966); *Sard v. Hardy, supra; Reinhardt v. Colton,* 337 N.W.2d 88 (Minn.1983); *Aiken v. Clary,* 396 S.W.2d 668 (Mo.1965); *Scott v. Bradford,* 606 P.2d 554 (Okla.1979). See generally, 1 Pegalis & Wachsman, *American Law of Medical Malpractice,* Sec. 2:15, at 102–104.

■ We agree with the Supreme Court of Oklahoma that a patient "obviously has no complaint if he would have submitted to the treatment if the physician had complied with his duty and informed him of the

2. Furthermore, even in emergency situations the physician should attempt to secure a relative's consent, if possible. *Canterbury v. Spence,* 464 F.2d 772 (D.C.Cir.), *cert. denied,* 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518

(1972). The record shows that Mr. Buzzell was present at the hospital during the surgery, and his consent for the additional surgery could have been obtained if a true emergency had existed.

risks." *Scott v. Bradford, supra,* 606 P.2d at 558. In the instant case, Mrs. Buzzell testified at her deposition that she would have consented to the left-ear surgery if Dr. Libi had discussed it with her and recommended it. On the basis of this testimony and other evidence in the record, the trial court found that Mrs. Buzzell would have consented to the surgery if she had been advised of the material risks prior to the surgery.[3] The record supports this finding, and the Buzzells have thus failed to establish the necessary element of causation. Dr. Libi therefore is not liable to the Buzzells for performing surgery on Mrs. Buzzell's left ear.[4]

## IV

The Buzzells next contend that they did not receive a fair and impartial trial. As a basis for this contention, they allege that the trial judge was biased in favor of the defendants and that Mrs. Buzzell was unable to hear the testimony of several witnesses.

Counsel for the Buzzells has submitted an affidavit to this court alleging that the wife of the judge who presided over the trial in this matter is employed as a nurse by St. Joseph's Hospital, one of the defendants. Counsel contends that he was unaware of this fact at the time of trial, and became aware of it only after the appeal had been filed.

We have consistently held that an issue not raised to or considered by the trial court cannot be raised for the first time on appeal. *Allen v. Kleven,* 306 N.W.2d 629 (N.D.1981). The proper procedure in this case would have been a motion for relief from the judgment, pursuant to Rule 60(b), N.D.R.Civ.P. Such a motion should have been made to the trial court, with leave of this court, because this appeal was pending at the time the "new" evidence was discovered. At the time this "new" evidence was allegedly discovered, Rule 60(b) specifically provided for consideration of newly discovered evidence by the trial court when an appeal is pending[5]:

> "Leave to make the motion need not be obtained from any appellate court except during such time as an appeal from the judgment is actually pending before such court."

It is clear that the rule allows consideration of the motion by the trial court after leave of this court has been obtained.

The trial court is in a much better position than an appellate court to pass upon the issues presented in a motion pursuant to Rule 60(b). *Gajewski v. Bratcher,* 240 N.W.2d 871 (N.D.1976) [quoting with approval *Wilkin v. Sunbeam Corp.,* 405 F.2d 165 (10th Cir.1968)]. When a party fails to obtain leave of this court and make his motion in the trial court, we are left with an insufficient record to determine the issue

3. Because Mrs. Buzzell admitted that she would have consented to the operation if the material risks had been disclosed, we find it unnecessary to discuss whether an objective or subjective test should govern the determination that the patient would have consented if disclosure had been made. Some courts have applied an objective "reasonable man" standard, holding that there is no liability if the hypothetical "reasonable man" would have consented under the circumstances. See e.g., *Canterbury v. Spence, supra; Sard v. Hardy,* 281 Md. 432, 379 A.2d 1014 (1977); *Reinhardt v. Colton,* 337 N.W.2d 88 (Minn.1983). Other courts have noted that the objective standard effectively eliminates the patient's right to self-determination, and have therefore adopted a subjective test. *Scott v. Bradford,* 606 P.2d 554 (Okla. 1979).

As the court noted in *Scott,* however, "If a plaintiff testifies he would have continued with the proposed treatment had he been adequately informed, the trial is over under either the subjective or objective approach." *Id.* at 559.

4. The trial court also found that the Buzzells had failed to prove any injury or damage resulting from Dr. Libi's unauthorized surgery on Mrs. Buzzell's left ear. Because we have concluded that the Buzzells failed to establish the element of causation, we find it unnecessary to reach the issue of lack of injury or damages.

5. We note that Rule 60(b) has been amended effective September 1, 1983. The relevant portion of the Rule now provides:

> "Leave to make the motion need not be obtained from any appellate court except while an appeal from the judgment is actually pending before that court."

on appeal. Having failed to present this issue in the first instance in the trial court, the Buzzells are not entitled to review of it on appeal.[6]

The Buzzells also contend that they were denied a fair and impartial trial because Mrs. Buzzell was unable to hear the testimony of several witnesses. We have reviewed the record and find that the trial court took steps to remedy the situation as soon as the problem was called to its attention. There obviously can be no error in the trial court's failure to take such remedial steps before the situation was brought to its attention by counsel for the Buzzells.

We conclude that the Buzzells were not denied the right to a fair and impartial trial.

### V

Finally, the Buzzells contend that the costs and disbursements taxed in favor of Dr. Libi and his professional corporation were excessive and contrary to law.

The clerk of court taxed costs in the amount of $11,955.85 against the Buzzells as part of the judgment dismissing the action against Dr. Libi and his professional corporation. The Buzzells filed their objection to costs and disbursements on January 7, 1983. On January 12, 1983, they filed their notice of appeal. By its order dated January 24, 1983, the district court held that the filing of the notice of appeal had divested the court of jurisdiction to rule on the objections to costs. The Buzzells now seek a reduction of costs by this court.

The trial court was correct in determining that it was without jurisdiction to consider the objections to costs. Jurisdiction of the supreme court attaches upon the filing of the appeal, and the trial court has no further jurisdiction in the matter. *Schmidt v. Schmidt,* 325 N.W.2d 230 (N.D. 1982); *Harwood v. Harwood,* 283 N.W.2d 144 (N.D.1979).

Thus, we are asked on appeal to review the taxation of costs without the benefit of an adequate record or a ruling by the trial court. As we noted in *City of Grand Forks v. Henderson,* 297 N.W.2d 450, 453 (N.D. 1980):

"If an appeal were taken without first allowing the trial court an opportunity to rule on the reasonableness of the costs or attorney's fees the appellate court would be asked to rule without having the views of the trial court which is not fair to the trial court."[7]

Many of the objections raised by the Buzzells in this case require determinations traditionally left to the discretion of the trial judge. For example, the amount of expert witness fees to be allowed are discretionary with the trial court. Sec. 28–26–06(5), N.D.C.C.; *Arneson v. City of Fargo,* 331 N.W.2d 30 (N.D.1983); *Schwartz v. Ghaly,* 318 N.W.2d 294 (N.D.1982); *Schmidt v. Plains Electric, Inc.,* 281 N.W.2d 794 (N.D.1979); *Peterson v. Hart,* 278 N.W.2d 133 (N.D.1979). Similarly, costs for the necessary expenses of taking depositions are within the trial court's discretion. *Schwartz v. Ghaly, supra.* The trial court, because it is involved in the action from its inception, is in a much better position to determine the reasonableness and necessity of the costs and disbursements sought by the prevailing party. It is thus for the trial court to make the initial determination of costs to be awarded, and its decision will be

---

6. We note that a party may move under Rule 60(b) for relief from a judgment, without obtaining leave of this court, after such judgment has been affirmed on appeal. *Gajewski v. Bratcher,* 240 N.W.2d 871 (N.D.1976). We express no opinion, however, on the propriety of a motion to the district court under any of the provisions of Rule 60(b) when, as here, the issue was first raised in this court.

7. In *City of Grand Forks v. Henderson,* 297 N.W.2d 450 (N.D.1980), we held that a motion to amend a judgment relating to costs or attorney fees is to be considered a Rule 59 motion which extends the time for appeal. It certainly would have been preferable in the instant case for the Buzzells to have waited until the trial court had ruled on their objections to costs before filing their notice of appeal. This would have tolled the period for appeal, and we would now have the benefit of the trial court's views on the issue of costs.

overturned on appeal only if an abuse of discretion is shown. *Moser v. Wilhelm,* 300 N.W.2d 840 (N.D.1980).

We conclude that we are unable to provide a meaningful review of the costs taxed as a part of the judgment without the benefit of a prior determination of the issue by the trial court. See *Hager v. Devils Lake Public School District,* 301 N.W.2d 630 (N.D.1981); *City of Bismarck v. Thom,* 261 N.W.2d 640 (N.D.1977). Accordingly, we remand this case to the district court for a determination of the costs and disbursements to be taxed as part of the judgment dismissing the Buzzells' action against Dr. Libi and his professional corporation.[8] In all other respects, the judgments appealed from are affirmed.

ERICKSTAD, C.J., PEDERSON and SAND, JJ., and PAULSON,* Surrogate Justice, concur.

---

8. The costs taxed as part of the amended judgment dismissing the action against St. Joseph's Hospital are not in dispute. The Buzzells objected to the taxation of these costs, and the trial court reduced the amount requested by St. Joseph's and allowed costs in the amount of $3,257. There is no allegation on appeal that the trial court abused its discretion in allowing costs in that amount. See *Moser v. Wilhelm,* 300 N.W.2d 840 (N.D.1980).

* Justice WM. L. PAULSON, served as a Surrogate Justice for this case pursuant to Section 27–17–03, N.D.C.C.