STATE of North Dakota, Plaintiff and Appellee,

v.

Clarence MEIER, Defendant and Appellant.

Cr. No. 870033.

Supreme Court of North Dakota.

March 31, 1988.

James W. Wold, State's Atty., Cooperstown, for plaintiff and appellee.

James A. Wright, of Weiss, Wright & Paulson, Jamestown, for defendant and appellant.

VANDE WALLE, Justice.

Clarence Meier appealed from a judgment of conviction finding him guilty of the crime of reckless endangerment in violation of Section 12.1–17–03, N.D.C.C., a Class C felony. We affirm in part and reverse in part.

In the early morning hours of May 11, 1986, Griggs County Sheriff Paul Hendrickson and Deputy Doug Kiefert were investigating the presence of a blue-colored automobile at the Claude Dreher farm near Binford, North Dakota. The officers had followed this vehicle from Binford to the Dreher farm. The officers had originally been pursuing the vehicle, but they were forced to abandon the pursuit when car speeds reached a dangerous level. However, with some effort, they were able to track the car to the Dreher farm.

The officers checked the vehicle and the area behind the Dreher home, but they found no one. As they returned to their vehicle, which was parked at the front of the Dreher home, the officers heard a gunshot and sought protection behind their vehicle. After hearing someone (later identified as Meier) yelling at them, they identified themselves. In response, Meier yelled, "I know who the fuck you are. Get out of here right now." Meier then fired a second shot.

After some more yelling, Sheriff Hendrickson recognized that it was Meier yelling, and he called out, "Clarence." Meier emerged from around the corner of the garage, carrying a rifle, which he held leveled at his waist and pointed at the officers. Meier approached the driver's side of the car, opposite the side where the officers were. As he walked toward the officers, Meier opened and shut the bolt action of the rifle. He then began walking around the front of the vehicle toward the officers.

As Meier approached the passenger door, Sheriff Hendrickson jumped out, grabbed the rifle, and twisted it out of Meier's hands. The sheriff then grabbed Meier, who pulled away and ran. Sheriff Hendrickson opened the bolt action of the rifle and shoved the barrel into the mud. The officers then pursued Meier, who was caught and arrested. Before leaving the Dreher farm, Deputy Kiefert retrieved the rifle and determined that it was empty. The testimony indicates that the rifle was capable of holding one shell in the firing chamber and four or five shells in its clip.

Meier testified at trial. He admitted that he had been a passenger in the vehicle that the officers had been pursuing, but denied knowing that the vehicle had been pursued. He testified that he had been preparing for bed in the Dreher's home (where he was staying) when he heard vehicle noises outside. He stated that he then grabbed a rifle and, although he knew it had only two shells in it because of his previous use of it, he checked the rifle by pulling the bolt all the way back and looking into the clip, and then used his finger to determine that it had only two shells in it. The officers testified that they saw no light in the Dreher home at any time.

Meier further testified that he fired the two shots, but that he had fired the shots toward the east, in the opposite direction from where the officers were located. Meier also denied that he pointed the rifle at the officers when he approached them.

After Meier's arrest he was charged with reckless endangerment. The information noted that it was charged as a Class C felony. The trial in this case was held to the court without a jury. The trial court found Meier guilty and sentenced him to one year's imprisonment but suspended six months of that sentence.

The sentencing occurred on January 23, 1987, but the judgment of conviction was not filed until January 30, 1987. Meier filed a notice of appeal on January 28, 1987. On January 29, 1987, the State filed a motion to correct an illegal sentence, pursuant to Rule 35, N.D.R.Crim.P., contending that under Section 12.1–32–02.1, N.D.C.C., the minimum sentence Meier could receive was two years' imprisonment. On March 16, 1987, the trial court issued an order changing Meier's sentence to two years' imprisonment.

## I

Meier argues that there was insufficient evidence to convict him of reckless endangerment. In making this argument Meier has referred us to comments made by the trial court prior to the announcement of its verdict. Those comments indicate that the trial court based its decision only upon Meier's pointing of the rifle at the officers, and not upon the shots Meier fired. At oral argument the State agreed that the trial court's determination was based upon Meier's pointing the rifle at the officers. Therefore, it appears that Meier was convicted of reckless endangerment based upon his actions in pointing a rifle at the two police officers.

The essence of Meier's argument is that, accepting the facts most favorable to the conviction, he could not, by pointing a rifle at the officers, have created the substantial risk of serious bodily injury or death necessary for conviction of the crime of reckless endangerment because that rifle was later determined to be not loaded. We disagree.

Our reckless-endangerment statute is codified at Section 12.1–17–03, N.D.C.C. That section provides:

"A person is guilty of an offense if he creates a substantial risk of serious bodi-

ly injury or death to another. The offense is a class C felony if the circumstances manifest his extreme indifference to the value of human life. Otherwise it is a class A misdemeanor. There is risk within the meaning of this section if the potential for harm exists, whether or not a particular person's safety is actually jeopardized."

In *State v. Hanson*, 256 N.W.2d 364 (N.D.1977), this court held that the culpability required for Section 12.1–17–03 is *recklessly*. That term is defined by Section 12.1–02–02(1)(c), N.D.C.C., to mean that a person engages in conduct

"c. 'Recklessly' if he engages in the conduct in a conscious and clearly unjustifiable disregard of a substantial likelihood of the existence of the relevant facts or risks, such disregard involving a gross deviation from acceptable standards of conduct, except that, as provided in section 12.1–04–02, awareness of the risk is not required where its absence is due to self-induced intoxication."

Meier argues that there was no risk of injury or death in this case because the rifle was later discovered to be unloaded. However, the last sentence of Section 12.1–17–03 makes it clear that the prohibited risk may exist even where a person's safety is not *actually* jeopardized so long as the *potential* for harm exists. Thus a person is guilty of reckless endangerment where his actions indicate that he has disregarded a risk to human life by creating the potential for harm, even if no person was actually placed in danger by the conduct. Such a result is clearly indicated by our statute's legislative history.

Section 12.1–17–03 was adopted in the criminal code revision of 1973. As we have previously stated:

"Our Criminal Code is modeled on the proposed Federal Criminal Code. Report of the North Dakota Legislative Council (1973) at 81. The Federal Code, in turn relies heavily on the Model Penal Code. References to both codes are made when

appropriate." *State v. Trieb*, 315 N.W. 2d 649, 657 fn. 9 (N.D.1982).

Our reckless-endangerment statute is identical to § 1613 of the proposed Federal Criminal Code. The comments to § 1613 state that *"It would not be necessary that the defendant actually place another in danger* in order to be guilty of reckless endangerment. The proposed statute deals with prospective risks, ..." [Emphasis added.] *Working Papers of the National Commission on Reform of Federal Criminal Laws*, Vol. II, pp. 836–837 (1970). This statement indicates that a violation of the statute may occur although no person was actually endangered. Thus reckless endangerment could occur even though Meier's rifle may not have been loaded.

The statement in the proposed Federal Criminal Code that reckless endangerment may occur even though no person is actually endangered is probably better explained by comments to the Model Penal Code's reckless-endangerment statute. That statute was noted by the drafters of the proposed Federal Criminal Code. Section 211.2 of the Model Penal Code defines the crime of recklessly endangering another person. It provides:

"A person commits a misdemeanor if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury. Recklessness and danger shall be presumed where a person knowingly points a firearm at or in the direction of another, whether or not the actor believed the firearm to be loaded."

Comments to this section, discussing the definition of the offense, state:

"Section 211.2 requires that the actor engage in conduct 'which places or may place another person in danger of death or serious bodily injury.' *This formulation applies to risk creation regardless of injury and regardless of whether anyone is actually endangered by the actor's conduct. Thus, for example, firing a gun at an occupied building may suffice for liability, even if none of the inhabitants is at home at the time.* Of course, if the actor knows that no one is

present in the building, he will lack the required culpability of recklessness with respect to the prospect of death or serious bodily injury." [Emphasis added.] *Model Penal Code and Commentaries*, Vol. I, pt. II, Commentary to § 211.2 (1980).

These comments clearly indicate that reckless endangerment may occur even though no person is actually endangered.

The example utilized by the drafters of the Model Penal Code serves as a useful analogy to this case. It would be impossible for harm to occur if no one was in the home which was fired into, in the above example, yet reckless endangerment occurred because the actor disregarded a risk to human life by creating a potential for harm. The potential for harm existed because the actor shot into a house in which someone may have been present. Similarly, it is impossible to harm someone by pointing a rifle which is later discovered to be unloaded; however, by pointing the rifle the defendant disregarded a risk to human life by creating a potential for harm because the rifle could have been loaded. Thus reckless endangerment may occur even though no person was actually endangered, for it is enough that there is a potential for harm in the actor's conduct. Therefore, by pointing a gun at another person, which gun was later determined to be unloaded, Meier committed the crime of reckless endangerment. The potential for harm exists any time a gun is pointed at another because experience has too often shown that a gun may be loaded, regardless of what the actor may believe.

We note that the comments cited above from the MPC indicate that a defendant cannot be convicted of reckless endangerment if he *knew* his actions could not cause harm. This is consistent with our definition of "reckless." Whether a defendant knew his actions could not cause harm is a question of fact reserved for the trier of fact. In this case it is clear that the court was not convinced that Meier *knew* the gun was not loaded.

Our conclusion that pointing a gun, later determined to be unloaded, constitutes

reckless endangerment is further supported by the Model Penal Code's presumption that pointing a gun at another is reckless and dangerous for purposes of recklessly endangering. The comments concerning this presumption state:

"Section 211.2 also creates a presumption of recklessness and dangerousness 'where a person knowingly points a firearm at or in the direction of another, whether or not the actor believed the firearm to be loaded.' A firearm is known chiefly for its lethal qualities and warrants a special requirement of care.... The burden of proof beyond a reasonable doubt remains on the prosecution, but the court must instruct the jury that they may regard knowingly pointing a firearm at another as sufficient evidence of the dangerousness of the actor's conduct and of his recklessness with respect to risk of death or serious bodily injury." [Footnotes omitted.] *Model Penal Code and Commentaries, supra.*

It is clear that under the Model Penal Code pointing a gun at a person sufficiently establishes reckless endangerment. Similarly, such an action is sufficient to establish reckless endangerment under our statutory scheme.

While our Legislature did not include the MPC presumption in Section 12.1–17–03, we do not believe that by failing to do so the Legislature intended to exclude the pointing of guns, later determined to be unloaded, from the purview of the reckless-endangerment statute. *Contra, Commonwealth v. Trowbridge,* 261 Pa.Super. 109, 395 A.2d 1337 (1978). The MPC presumption is a specific example of the type of conduct intended to be prohibited by a reckless-endangerment statute. See, e.g., Vernon's Tex.Code Ann. Penal Code § 22.05 and accompanying Practice Commentary. Although the Legislature did not utilize the specific example utilized by the MPC in its statute, the Legislature did proscribe the general type of conduct of which the presumption is but a specific example.

As the comments to the MPC recognize, a firearm is a lethal instrument. The potential for harm exists any time a firearm is pointed at a person. It is common knowledge that numerous persons are killed each year by guns which the handlers thereof did not realize were loaded, or thought were unloaded, which were in fact loaded. In *State v. Hanson, supra,* this court observed that the purpose of the reckless-endangerment statute is to protect society from the reckless *risk* of serious bodily injury or death, that what the statute does is protect against the *risk* of such injury or death, and that it is the *risk* that is to be avoided. The risk to be avoided in the facts before us is that the gun may be loaded even though the person aiming the gun firmly believes it to be unloaded at the time it is pointed at another person. It was therefore appropriate for the Legislature to seek to deter people from pointing guns at others, as well as similar actions which indicate a disregard for human life.

We are aware of the decisions of other courts which have held that reckless endangerment cannot be established because the victim is in no actual danger when a gun is pointed at the victim and the gun is later determined to be unloaded. See *Cobb v. State,* 495 So.2d 701 (Ala.Cr.App.1984); *State v. McLaren,* 135 Vt. 291, 376 A.2d 34 (1977); *State v. Trowbridge, supra.* However, those decisions are based on statutes which differ from our reckless-endangerment statute in that none of the statutes in those cases contain the proviso in Section 12.1–17–03 that "There is risk within the meaning of this section if the potential for harm exists, whether or not a particular person's safety is actually jeopardized." Thus those decisions are distinguishable.

Moreover, the tenet that "The primary objective of statutory construction is to ascertain legislative intent" [*State v. Coutts,* 364 N.W.2d 88, 92 (N.D.1985) ] dictates the result in this case. The legislative history of our reckless-endangerment statute, which we glean from the comments to the proposed Federal Criminal Code and the MPC, indicates that reckless endangerment may occur even though no person was actually endangered. Instead, it need only be shown that the actor's conduct created the potential for harm. Hav-

ing discerned this legislative intent, we are bound to follow it.

We are also aware that in *State v. Hanson, supra,* we stated that the part of Section 12.1–17–03 which provides that "There is risk within the meaning of this section if the potential for harm exists, whether or not a particular person's safety is actually jeopardized" was designed to apply to situations where a group of persons was endangered rather than one specific individual. While we agree that this type of situation is covered by Section 12.1–17–03, the statute is not limited thereto.

We conclude that because reckless endangerment may occur even though no person is actually endangered, the rifle did not have to be loaded in order that the statute be violated. It is only necessary that the actor's conduct create a potential for harm. Applying Section 12.1–17–03 and the definition of "reckless" under Section 12.1–02–02(1)(c) to these facts, the trial court could find Meier guilty of reckless endangerment because, as recognized by the trial court's statement that "there was a substantial risk of serious bodily injury or death to another by [Meier's] approaching law-enforcement officers with a weapon in which he had recently fired two shells," the potential for harm was created when Meier pointed a gun, which might have been loaded, at the officers.

## II

Meier also contends that the trial court lacked jurisdiction to correct his sentence because he filed an appeal prior to the date of the order for correction of sentence. Meier filed his notice of appeal on January 28, 1987, and the order for correction of sentence was made on March 16, 1987.

■ It is well recognized that unless otherwise provided by law, the trial court loses jurisdiction over a matter once an appeal is filed in that matter. *Buzzell v. Libi,* 340 N.W.2d 36 (N.D.1983). In arguing in support of the order for correction of sentence the State refers to that portion of Rule 35, N.D.R.Crim.P., which provides that the "sentencing court may correct an illegal sentence at any time ..." However, the

explanatory note to Rule 35 clearly indicates that the trial court loses jurisdiction over a case once an appeal is filed:

"The Rule encompasses two forms of relief: reduction of sentence, and correction of sentence either illegal in form or manner of imposition. *In either instance:* ... (3) *the sentencing court is prohibited from acting during the pendency of the appeal through the United States Supreme Court."* [Emphasis added.]

When subsection (a) of Rule 35 is read in conjunction with subsection (b) which permits the sentencing court to reduce a sentence within 120 days after the sentence is imposed, it becomes apparent that the provision in subsection (a) permitting the court to correct an illegal sentence "at any time" means only that the authority of the court to correct an illegal sentence is not limited by a number of days, as is the case with a reduction of sentence. The term "at any time" was not used to vest the sentencing court with jurisdiction it lost when the appeal was taken. Thus we conclude that the trial court lacked jurisdiction to correct the sentence once the notice of appeal was filed, and therefore we reverse the order for correction of sentence.

■ We note that our conclusion that the trial court loses jurisdiction to correct a sentence under Rule 35 once an appeal is filed is congruent with the Federal courts' interpretation of Rule 35 of the Federal Rules of Criminal Procedure, from which our rule is derived. When a procedural rule is patterned on a Federal rule, the Federal courts' interpretation of the Federal rule is highly persuasive. *State v. Valgren,* 411 N.W.2d 390 (N.D.1987). Under the Federal rule, "After an appeal has been perfected, and the appeal is still pending, the trial court may not correct or alter a sentence." *Orfield's Criminal Procedure Under the Federal Rules,* Vol. 5 § 35.7 (1987). See, e.g., *United States v. Ellenbogen,* 390 F.2d 537 (2d Cir.1968); *United States v. Mack,* 466 F.2d 333 (D.C.Cir.), *cert. denied* 409 U.S. 952, 93 S.Ct. 297, 34 L.Ed.2d 223 (1972); *United States v. Garrett,* 583 F.2d 1381 (5th Cir.1978); *United*

*States v. Hill,* 447 F.2d 817 (7th Cir.1971); Contra, *Doyle v. United States,* 721 F.2d 1195 (9th Cir.1983), and *United States v. Schiffer,* 351 F.2d 91 (6th Cir.), *cert. denied* 384 U.S. 1003, 86 S.Ct. 1914, 16 L.Ed.2d 1017 (1965). Thus, also under Rule 35, F.R.Crim.P., a trial court may not correct a sentence once a notice of appeal is filed.[1]

CONCLUSION

Therefore, we affirm Meier's conviction for reckless endangerment. However, we reverse the order for correction of sentence made during the pendency of this appeal.

ERICKSTAD, C.J., and LEVINE and MESCHKE, JJ., concur.

GIERKE, Justice, dissenting.

I respectfully dissent from that portion of the majority opinion which affirms Meier's conviction for reckless endangerment. I believe that in determining whether or not Meier's conduct constituted reckless endangerment there is an essential issue of whether the gun was actually loaded or unloaded.

In order to convict Meier of reckless endangerment as charged, the State must prove beyond a reasonable doubt that Meier created a substantial risk of serious bodily injury or death to another and that the circumstances manifested Meier's extreme indifference to the value of human life. Section 12.1–17–03, N.D.C.C.

In *State v. McLaren,* 135 Vt. 291, 293, 376 A.2d 34, 36 (1977), the Supreme Court of Vermont interpreted its reckless endangerment statute (13 V.S.A. Section 1025) to proscribe conduct which would place the victim in actual danger of death or serious bodily injury, not mere apparent danger.[1] *State v. McLaren, supra,* overruled *State v. Cushman,* 133 Vt. 121, 329 A.2d 648 (1974), where a majority opinion held that under the reckless endangerment statute it is irrelevant whether a weapon is loaded or unloaded. In overruling *State v. Cushman, supra,* the Vermont Court in *State v. McLaren, supra,* stated that:

"13 V.S.A. § 1025 [the reckless endangerment statute] proscribes conduct which places or may place a person in danger of death or serious bodily harm. We fully recognize, as did both the majority and dissenting opinions in *Cushman,* that the statutory presumption renders irrelevant the state of mind of the actor as it relates to the loaded nature of the firearm. We cannot agree, however, with the view expressed by the majority in *Cushman* that the presumption can be likewise construed to make irrelevant the actual dangerous nature of the firearm itself. We therefore overrule *Cushman* and hold that the ... [reckless endangerment statute was] intended to proscribe conduct which would place the victim in actual danger of death or serious bodily injury, not mere apparent danger."

The Vermont Court further stated in *State v. McLaren, supra,* that in determining whether the victim was placed in an objective state of danger of death or serious bodily harm there is an essential issue of whether the gun was unloaded or otherwise inoperable.

In *Cobb v. State,* 495 So.2d 701, 703 (Ala.Crim.App.1984), the Alabama Court of Criminal Appeals determined whether present ability, as opposed to mere apparent ability, is necessary to support a reckless endangerment conviction by reviewing the law of assault. The Alabama Court in *Cobb v. State, supra,* quoted *Rollins v. City of Birmingham,* 344 So.2d 200, 203 (Ala.Crim.App.1977), where it was stated:

" 'The intentional presentation of a pistol or gun at another, within effective range, under such circumstances as denote an intention to shoot the other, *coupled with the ability to do so,* constitutes one method of accomplishing an assault.

1. We note that in his appellate brief Meier argued that the criminal information charging him with reckless endangerment was insufficient. However, at oral argument, Meier conceded this issue.

1. 13 V.S.A. Section 1025 and Section 12.1–17–03, N.D.C.C., were both patterned after the Model Penal Code. *See* S.B. 2045, S.L. 1973, ch. 116, Section 17; *see also,* Model Penal Code Section 211.2.

*Tarver v. State,* 43 Ala. 354.' (Emphasis added.)"

The Alabama Court found that the present ability to accomplish the assault is necessary and therefore a conviction for reckless endangerment would be sustained if there was proof that the gun was loaded or if the jury could rationally conclude from the evidence presented that the gun was loaded. The Alabama Court, in *Cobb v. State,* 495 So.2d at 704, further stated that:

"Absent a showing of actual ability to inflict harm, the most that [the defendant] could be guilty of would be menacing, ..."

In *Commonwealth v. Trowbridge,* 261 Pa.Super. 109, 115, 395 A.2d 1337, 1340–1341 (1978), the Superior Court of Pennsylvania held that its reckless endangerment statute "retains the common law assault requirement of actual present ability to inflict harm" and that while pointing an unloaded gun would sustain a conviction for simple assault it would not support a conviction for reckless endangerment.

While our reckless endangerment statute differs from these other states' reckless endangerment statutes in certain respects, an analogy can be drawn between the statutory schemes generally and more particularly between the relationship of the simple and enhanced offenses.

In my opinion, the issue of whether a firearm was unloaded or was otherwise inoperative is an essential issue in determining whether under Section 12.1–17–03, N.D.C.C., a substantial risk of death or serious bodily injury is created.

The majority states that reckless endangerment occurs when the actor's conduct creates a potential for harm. Additionally, the majority states that "the [p]otential for harm exists any time a gun is pointed at another because experience has too often shown that a gun may be loaded, regardless of what the actor may believe." Thus, the majority suggests that the crime of reckless endangerment occurs any time a gun is pointed at another regardless if it is loaded or unloaded.

It is necessary to define the term "potential" before one can determine whether or not an unloaded gun creates a potential for harm. Potential is defined as "potent; that can, but has not yet, come into being; possible; latent" and "expressing possibility, capability, or the like." Webster's New World Dictionary 1114–1115 (2d ed. 1980). Also, it goes without saying that no one has ever been shot with a gun that was not loaded. Accordingly, I do not believe that the type of potential for harm as contemplated in the reckless endangerment statute, Section 12.1–17–03, N.D.C.C., is created from a gun that is not loaded any more than from a gun without a firing pin. The critical factor in finding a substantial risk is neither the intent of the actor nor the fear of the victim but, rather the actual danger created from the weapon. There must be a present ability, as opposed to a mere apparent ability, to support a conviction under our reckless endangerment statute.

This does not mean that there are no circumstances under which the pointing of an unloaded gun can create a danger of death or serious bodily injury to support a reckless endangerment conviction, even though not from the bullet which would be fired if the gun were loaded. Danger of death or serious bodily injury could be created where the resulting fear or apprehension of danger creates an actual danger of death or serious bodily injury to others, such as where an unloaded gun is pointed at a driver of a car on a highway because the danger would come from the loss of control of the vehicle in a panic situation. Also, pointing an unloaded gun into a crowd of people creates a significant risk that someone may retaliate with gunfire. *See Commonwealth v. Holguin,* 254 Pa. Super. 295, 307–308, 385 A.2d 1346, 1352–1353 (1978); *see also State v. Emilo,* 146 Vt. 277, 279, 501 A.2d 1188, 1189 (1985) (danger from a loaded but uncocked gun).

In the instant case, the defendant was charged only with recklessly endangering the officers. Under the circumstances of this case, the mere pointing of the gun itself did not place any other person in danger of death or serious bodily injury. The officers were alone on a farm in the

middle of the night and standing behind their patrol car. There was no danger to vehicular traffic or pedestrians, and no crowd of people to panic.

There was testimony in the instant case that Meier checked the weapon to determine how many shells were in it by visually looking and with his finger feeling that there were only two shells in the rifle. It was argued that Meier could have easily been mistaken as to the number of shells the rifle contained because it was a dark night and no lights were on in the house. However, there was testimony from Sheriff Hendrickson that he neither observed any shell eject from the rifle nor noticed any shells on the ground after he disarmed Meier and operated the bolt action of the rifle. In addition, there was undisputed testimony by Deputy Keifert that after he retrieved the rifle he examined it and discovered that there were no live cartridges in it.

I believe that the rule of statutory construction that criminal statutes are to be strictly construed in favor of the accused dictates that such evidence is simply insufficient to establish beyond a reasonable doubt a substantial risk of serious bodily injury or death to another. Nevertheless, I do not condone Meier's action. While I do not believe that there was sufficient evidence to convict him of the offense of reckless endangerment, his actions may have constituted a different offense which was not charged. *E.g.*, Section 12.1–17–04, N.D.C.C. (Terrorizing); Section 12.1–17–05, N.D.C.C. (Menacing); and Section 12.1–17–01, N.D.C.C. (Assault).

For the reasons stated herein, I would reverse the conviction.