J-S40018-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL MINGO | : | |
| | : | |
| Appellant | : | No. 2992 EDA 2019 |

Appeal from the Judgment of Sentence Entered July 31, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008131-2017

BEFORE: SHOGAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.: **FILED JANUARY 14, 2021**

Appellant, Michael Mingo, appeals *nunc pro tunc* from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial convictions for criminal mischief, criminal conspiracy, possessing instruments of crime ("PIC"), terroristic threats, and recklessly endangering another person ("REAP").[1] We affirm.

The trial court opinion set forth the relevant facts of this appeal as follows:

> On August 21, 2017, at approximately 11:00 a.m., George Brooks took his car for a test drive around the 4700 block of Mulberry and Foulkrod Streets in Philadelphia, Pennsylvania, where he resided. While returning home from the test drive, Mr. Brooks observed both [Appellant] and Mr.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3304(a)(5), 903, 907, 2706(a)(1), and 2705, respectively.

Brooks' neighbor living across the street, Co-Defendant Jose Ortiz-DeJesus. Co-Defendant shouted for Mr. Brooks to move his "motherfucking truck," which was parked approximately "fifty feet" from Co-Defendant's home. Then, [Appellant] and Co-Defendant ran up to the driver-side door of Mr. Brooks' car and Mr. Brooks exited his vehicle.

Mr. Brooks testified that [Appellant] subsequently pointed a firearm towards Mr. Brooks and stated: "I'm from Brooklyn," and "Motherfucker, don't move." Mr. Brooks described the firearm as a "black," "handgun," "pistol" that "looked like an automatic." Next, Mr. Brooks removed "a samurai set of knives" from the trunk of his car. [Appellant] then told Mr. Brooks that he and Co-Defendant were going to "fuck [Mr. Brooks] up."

Shortly thereafter, scuffling occurred between Mr. Brooks, Co-Defendant and Mariana DeJesus, Co-Defendant's mother and [Appellant's] godmother. Subsequently, Mr. Brooks attempted to enter his home. However, [Appellant] broke the windows and mirrors of Mr. Brooks' car with a golf club, pulled off Mr. Brooks' car mirror, and attempted to hit Mr. Brooks with the golf club. Mr. Brooks testified that he tried to "fend off" [Appellant], but that [Appellant] started swinging the doors of Mr. Brooks' car in order to bend the doors out of shape and break the doors' hinges. Next, [Appellant] removed a container from the trunk of Mr. Brooks' car and threw its contents onto the porch of Mr. Brooks' home. At that point, Mr. Brooks was able to safely enter his home and lock his security door. However, [Appellant] subsequently broke Mr. Brooks' security door with the golf club. Mr. Brooks told his wife to call the police.

Katrina Ethridge testified that she observed, from the porch of her home, [Appellant]: "beating [Mr. Brooks'] car up" with a golf club; "throwing up hand signs"; and verbally threatening to "F [Mr. Brooks] up." In addition, Ms. Ethridge testified that she observed [Appellant] move his shirt to reveal that he had a firearm tucked in his waistband, and later pass that firearm to Co-Defendant. Ms. Ethridge testified that she knew the object she observed was a firearm because she saw the firearm's "black handle." According to Ms. Ethridge, Co-Defendant was no longer at the scene of the subject altercation when police arrived.

- 2 -

Police Officer Stephen Burgoon testified that he and his partner received a radio call for "a person with a gun on the 4700 block of Mulberry and Foulkrod." Upon arriving at the scene, Officer Burgoon observed a "green Chevrolet Malibu" with all of its windows broken out, a large crowd, and [Appellant] and Mr. Brooks arguing. Officer Burgoon and his partner separated [Appellant] and Mr. Brooks. Thereafter, Officer Burgoon learned from Mr. Brooks that [Appellant] had a "black handgun" and "broke the windows out of [Mr. Brooks'] car and [] house." Officer Burgoon subsequently arrested [Appellant]. No firearm was recovered from [Appellant].

As a result of Appellant's conduct, Mr. Brooks testified that: the driver side door of his car was broken; his car's rear window was broken; his car mirrors were broken; the security door of his home was broken; and the porch of his home was covered in contents from a container. Mr. Brooks further testified that it cost him approximately "six or seven hundred" dollars to repair the damage to his car, and that his security door still had not been replaced.

(Trial Court Opinion, filed January 14, 2020, at 2-4) (internal record citations omitted).

Following a bench trial, the court convicted Appellant of criminal mischief, conspiracy, PIC, terroristic threats, and REAP. On July 31, 2018, the court sentenced Appellant to an aggregate term of eleven and one-half (11½) to twenty-three (23) months' incarceration, followed by three (3) years of probation. The court also ordered restitution in the amount of $2,000.00. Appellant timely filed a post-sentence motion on August 9, 2018. In it, Appellant claimed "the Commonwealth presented no evidence to substantiate its claim for restitution beyond $1000." (Post-Sentence Motion, filed 8/9/18, at ¶4). The court denied the motion on August 14, 2018, and Appellant did

not seek further review with this Court.

On December 13, 2018, Appellant timely filed a *pro se* petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. The court appointed current counsel, who filed an amended petition on July 12, 2019. On October 4, 2019, the court granted PCRA relief, reinstating Appellant's direct appeal rights *nunc pro tunc*.

Appellant timely filed a notice of appeal *nunc pro tunc* on October 16, 2019. On October 22, 2019, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely complied on November 8, 2018.

Appellant now raises two issues for this Court's review:

> Whether the verdict was contrary to law as based on insufficient evidence.
>
> Whether the [trial] court erred in awarding restitution.

(Appellant's Brief at 8).

In his first issue, Appellant contends the guilty verdicts are based upon the testimony from Mr. Brooks and Ms. Ethridge. Appellant emphasizes that Mr. Brooks is "a man convicted of making false statements," and Ms. Ethridge is "an elderly woman who allegedly saw the incident from a significant distance away." (*Id.* at 17-18). Appellant also claims that Mr. Brooks "had a complex and tense prior relationship" with the parties involved in the dispute, which gave him a "motive to escalate that conflict into the legal matter at hand." (*Id.* at 18). Appellant relies on *Commonwealth v. Bennett*, 303 A.2d 220

(Pa.Super. 1973), for the proposition that such weak and inconsistent testimony was not sufficient to sustain the guilty verdicts.

Further, regarding the conviction for PIC, Appellant argues the Commonwealth failed to recover a firearm. Appellant acknowledges Ms. Ethridge's testimony that she saw Appellant pass a gun to Mr. DeJesus, but cites other portions of testimony where Ms. Etheridge merely referred to a "black item" in Appellant's pants. Appellant posits that a "black item" could have been "a wallet or any number of objects, not necessarily a gun." (*Id.* at 20). Based upon the foregoing, Appellant concludes the Commonwealth presented insufficient evidence to support his convictions.[2] We disagree.

_____

[2] Appellant raises additional, discrete arguments related to the sufficiency of the evidence for each of his convictions. (*See* Appellant's Brief at 18-22). Appellant's Rule 1925(b) statement, however, only preserved the following arguments:

> The Commonwealth failed to recover or present as evidence, a firearm. Additionally, the testimony of the Commonwealth's witnesses [was] not worthy of belief. The complaining witness … was not credible due to a previous conviction for making false statements. Moreover, Mr. Brooks testified that [Appellant] threatened him with a firearm, despite there being no physical evidence of one. Additionally, there was a history of animosity between Mr. Ortiz-DeJesus (co-defendant) and Mr. Brooks providing Mr. Brooks with an ulterior motive.

(Rule 1925(b) Statement, filed 11/8/19, at ¶2) (internal record citations omitted). Consequently, we limit our review to those arguments preserved in the Rule 1925(b) statement. *See Commonwealth v. Hill*, 609 Pa. 410, 417, 16 A.3d 484, 488 (2011) (reiterating that any appellate issues not raised in Rule 1925(b) statement will be deemed waived); *Commonwealth v.*

- 5 -

Our standard of review for sufficiency claims is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Tucker*, 143 A.3d 955, 964 (Pa.Super. 2016), *appeal denied*, 641 Pa. 63, 165 A.3d 895 (2017) (quoting *Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011)).

"As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Rahman*, 75 A.3d 497, 500

---

*Garland*, 63 A.3d 339, 344 (Pa.Super. 2013) (explaining Rule 1925(b) statement must state with specificity element or elements upon which appellant alleges that evidence was insufficient).

(Pa.Super. 2013) (quoting ***Commonwealth v. Pettyjohn***, 64 A.3d 1072, 1074 (Pa.Super. 2013)).

> However, the inferences must flow from facts and circumstances proven in the record, and must be of such volume and quality as to overcome the presumption of innocence and satisfy the [factfinder] of an accused's guilt beyond a reasonable doubt. The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fail even under the limited scrutiny of appellate review.

***Commonwealth v. Kearney***, 92 A.3d 51, 64 (Pa.Super. 2014) (quoting ***Commonwealth v. Slocum***, 86 A.3d 272, 275-76 (Pa.Super. 2014)).

Section 3304 of the Crimes Code defines criminal mischief, in relevant part, as follows:

**§ 3304.  Criminal mischief**

   **(a) Offense defined.**—A person is guilty of criminal mischief if he:

*     *     *

      (5)    intentionally damages real or personal property of another[.]

18 Pa.C.S.A. § 3304(a)(5).

Section 903 of the Crimes Code defines criminal conspiracy as follows:

**§ 903.  Criminal conspiracy**

   **(a)   Definition of conspiracy.—**A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

      (1)   agrees with such other person or persons that they or one or more of them will engage in conduct which

- 7 -

constitutes such crime or an attempt or solicitation to commit such crime; or

(2)    agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a)(1), (2). "To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy." **Commonwealth v. Melvin**, 103 A.3d 1, 42 (Pa.Super. 2014).

Section 907 of the Crimes Code defines PIC as follows:

### § 907.  Possessing instruments of crime

**(a)  Criminal instruments generally.—**A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.

18 Pa.C.S.A. § 907(a).  Further, a witness's testimony alone can establish a defendant's possession of a firearm. **See Commonwealth v. Antidormi**, 84 A.3d 736, 757 (Pa.Super. 2014), *appeal denied*, 626 Pa. 681, 95 A.3d 275 (2014).

Section 2706 of the Crimes Code defines terroristic threats, in relevant part, as follows:

### § 2706.  Terroristic threats

**(a) Offense defined.**—A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:

- 8 -

> (1) commit any crime of violence with intent to terrorize another[.]
>
>                 *     *     *

18 Pa.C.S.A. § 2706(a)(1). "[N]either the ability to carry out the threat nor a belief by the person threatened that it will be carried out is an essential element of the crime." ***Commonwealth v. Fenton***, 750 A.2d 863, 865 (Pa.Super. 2000) (internal citation and quotation marks omitted).

Section 2705 of the Crimes Code defines REAP as follows:

> ### § 2705. Recklessly endangering another person
>
> A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.

18 Pa.C.S.A. § 2705.

> Thus, the crime requires (1) a *mens rea* of recklessness, (2) an *actus reus* [of] some "conduct," (3) causation "which places," and (4) the achievement of a particular result "danger," to another person, of death or serious bodily injury.

***Commonwealth v. Reynolds***, 835 A.2d 720, 727 (Pa.Super. 2003) (quoting ***Commonwealth v. Trowbridge***, 395 A.2d 1337, 1340 (Pa.Super. 1978)).

Instantly, the trial court found the Commonwealth's witnesses were credible.

> [The trial c]ourt found the Commonwealth's witnesses to be credible and the Defense witnesses to not be credible. Mariana DeJesus was [found not] credible because of her close relationship with [Appellant], as his godmother; and because of her own involvement in the subject altercation.[8] In contrast to Mariana DeJesus, [the trial c]ourt found Mr.

Brooks credible because Mr. Brooks' testimony was supported by photos depicting the damage Mr. Brooks described, multiple 9-1-1 calls from different sources, and the testimony of Ms. Ethridge and Police Officer Burgoon.[9]

> [8] On April 18, 2019, Mariana DeJesus pled guilty to hitting Mr. Brooks with a rake during the subject altercation between Mr. Brooks, [Appellant], and Mariana DeJesus' son, Co-Defendant Jose Ortiz-DeJesus.

> [9] Due to the aforementioned reasons, [the trial c]ourt found Mr. Brooks' testimony to be credible even despite Mr. Brooks' previous conviction for making false statements and his history of animosity with the co-defendant, as raised by [Appellant].

(**See** Trial Court Opinion at 7-8) (internal record citation omitted). In light of the applicable standard of review as well as our review of the record,[3] we are not inclined to reweigh the evidence or otherwise substitute our judgment for that of the trial court. **See Tucker, supra**.

Moreover, the record confirms that the verdicts were not based upon conjecture and speculation due to weak or inconsistent testimony. **See Kearney, supra**. Mr. Brooks and Ms. Ethridge both described a chaotic scene where Appellant and his co-defendant threatened Mr. Brooks and destroyed his property. Additionally, Mr. Brooks and Ms. Ethridge both testified that Appellant possessed a firearm. (**See** N.T. Trial, 5/29/18, at 15-16, 51, 58). Such testimony established Appellant's possession of the firearm, regardless

---

[3] The record on appeal included the photos of the crime scene, which depict the damage to Mr. Brooks' automobile and security door. (**See** Commonwealth's Trial Exhibits 2-9).

of whether police recovered the weapon from his person. *See Antidormi, supra*. Because the witnesses' testimony was unequivocal and consistent, Appellant is not entitled to relief on his first issue. *See Tucker, supra*; *Kearney, supra*.

In his second issue, Appellant argues "[t]he sentencing court erred in ordering Appellant to pay $2,000.00 in restitution because there was no factual basis in the record to support the ordered number." (Appellant's Brief at 23). Appellant concludes his "sentence is excessive and speculative for providing no evidentiary basis for the actions, and therefore illegal."[4] (*Id.* at 24). As presented, Appellant's challenge implicates the discretionary aspects of sentencing. *See Commonwealth v. Weir*, ___ Pa. ___, 239 A.3d 25 (2020) (explaining that argument that restitution was not supported by record implicates discretionary aspects of sentencing).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. *Commonwealth v. Sierra*, 752 A.2d 910, 912 (Pa.Super. 2000). Prior to reaching the merits of a discretionary sentencing issue:

[W]e conduct a four part analysis to determine: (1) whether

---

[4] Appellant also baldly asserts "no record was ever made regarding [his] financial situation and ability to pay." (Appellant's Brief at 24). Nevertheless, "restitution in a criminal case is mandatory and the defendant's ability to pay is irrelevant unless and until he defaults on the restitution order." *Commonwealth v. Leber*, 802 A.2d 648, 652 (Pa.Super. 2002). Consequently, the court was not obligated to inquire into Appellant's ability to pay when it entered the sentencing order.

> appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted).

When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by, *inter alia*, including a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. *Commonwealth v. Mouzon*, 571 Pa. 419, 425-26, 812 A.2d 617, 621-22 (2002); Pa.R.A.P. 2119(f). "If the Commonwealth objects to the appellant's failure to comply with Pa.R.A.P. 2119(f), the sentencing claim is waived for purposes of review." *Commonwealth v. Griffin*, 149 A.3d 349, 353 (Pa.Super. 2016), *affirmed*, ___ Pa. ___, 207 A.3d 827 (2019).

Instantly, Appellant's brief fails to set forth a separate concise statement demonstrating that there is a substantial question, pursuant to Rule 2119(f). The Commonwealth has objected to this deficiency. (*See* Commonwealth's Brief at 10). Thus, Appellant's second issue is waived. *See Griffin, supra*. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date:* *1/14/2021*