J-S23034-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| RUSSELL RUDOLPH BRUDER | : | |
| Appellant | : | No. 1616 MDA 2021 |

Appeal from the Judgment of Sentence Entered November 15, 2021
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-CR-0001696-2020

BEFORE: STABILE, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED OCTOBER 27, 2022**

Appellant, Russell Rudolph Bruder, appeals from the judgment of sentence of 3 to 23 months' incarceration imposed by the Court of Common Pleas of Schuylkill County following a jury trial at which he was convicted of simple assault by physical menace.[1] For the reasons set forth below, we affirm.

This case arises out of an incident that occurred late on the night of August 28 to 29, 2020, in which Appellant pointed a shotgun at a man and a woman who were sitting in a car in the parking lot of the Joliett Fire Company (the Fire Company). The only persons present at the time of the incident were two occupants of the car, Clinton Mettler and Brittany Mauer, and Appellant

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2701(a)(3).

and his wife. Appellant was charged with two counts of aggravated assault, two counts of simple assault by physical menace, and two counts of reckless endangerment. Amended Criminal Information.

A jury trial was held on October 20, 2021, at which Mauer, Mettler, and the state trooper who responded at the scene testified for the Commonwealth. Appellant, his wife, and the president of the Fire Company testified for the defense. In addition, Appellant played a video recording from security cameras at the Fire Company at trial that showed Appellant's and his wife's actions during the incident.

Maurer and Mettler testified that Mettler was driving Maurer home from a date on the night in question and that they had pulled into the Fire Company parking lot because of poor driving conditions. N.T. Trial at 17-19, 31-33. Maurer, who was sitting in the front passenger seat, testified that while she and Mettler were sitting in the car talking, Appellant walked to the parking lot and pointed a shotgun at her face. *Id.* at 19-20. Maurer testified that Appellant, while pointing the shotgun at her, screamed "[w]hat the bleep are you doing here." *Id.* at 20. Maurer testified that Mettler then pushed her forward out of the way and pulled out a gun, that Appellant said to Mettler "why are you pointing a gun at me" and Mettler replied "because you came up and aimed a shotgun at us," and that Appellant said to Mettler "[a]re you ready to die?" *Id.* at 21-22. Maurer testified that she was terrified and thought that she was going to die. *Id.* at 22. Maurer testified that after

Mettler told Appellant that he was a disabled veteran and the woman who was with Appellant verified that from the car's license plate, Appellant stopped pointing the shotgun at her and Mettler. *Id.* Maurer testified that Appellant and the woman then walked away to the firehouse and Mettler called the police. *Id.* at 22-23.

Mettler testified that while he and Maurer were sitting in the car in the Fire Company parking lot, Appellant came up to the car with a shotgun and said "[w]hat the fuck are you doing here." N.T. Trial at 33-34. Mettler testified that he responded "[w]ho the fuck are you because you just come up on somebody like that" and Appellant raised the shotgun at them. *Id.* Mettler testified that he then got his gun from the driver side door, pushed Maurer down, reached across her, and told Appellant not to move or he would shoot, and that Appellant asked Mettler if he was ready to die. *Id.* at 33-36, 39. Mettler testified that while Appellant was pointing the shotgun at him and Maurer, he noticed that Appellant's hand was not on the trigger and that he told Appellant not to move his hand and to put the shotgun down. *Id.* at 35-36. Mettler testified that after some verbal back and forth during which the woman with Appellant read from Mettler's license plate that he was a disabled veteran, Appellant pointed the shotgun to the ground. *Id.* Mettler testified that that he then told Appellant to get away from him and Maurer, that Appellant moved away, and that Mettler then called the police. *Id.* at 36. Mettler testified that while Appellant was pointing the shotgun at them, he

thought that either he would kill Appellant or Appellant would kill him or Maurer. *Id.* at 37.

The state trooper testified that he spoke to Mettler, Maurer, and Appellant after he arrived at the scene. N.T. Trial at 45. The trooper testified that Appellant told him that he went to the Fire Company with a shotgun because of concerns about criminal activity in the area and that when he saw the car in the parking lot, he approached it and pointed the shotgun at an occupant's head. *Id.* at 45-46. The trooper also testified that Appellant told him that the shotgun was not loaded and that when he, the trooper, retrieved the shotgun from Appellant, it was not loaded. *Id.* at 46.

Appellant and his wife testified that they were members of the Fire Company and walked there from their house that night because they heard noise from an ATV that they believed was trespassing on the Fire Company property. N.T. Trial at 60-64, 75-79. Appellant testified that he took a shotgun with him for protection, but that it was unloaded and that his wife carried a bullet in her pocket. *Id.* at 79, 82, 99. Appellant testified that he approached the car with his shotgun pointed to the ground and said to the occupants "[w]hat the F are you doing here" and saw Mettler pointing a gun at him. *Id.* at 79-82. Appellant testified that he then jumped back and pointed the shotgun at the occupants and told his wife "[g]et back, Babe, he's got a gun." *Id.* at 80-82. Appellant testified that after Mettler told him several

times to check the car's license plate and Appellant's wife reported that it said "disabled veteran," he lowered his gun.  *Id.* at 82-83.

Appellant's wife testified that Appellant took a shotgun with him when they walked to the Fire Company and that it was unloaded.  N.T. Trial at 65. She testified that they saw the car parked at the Fire Company and that Appellant walked up to the car and said "what the F are you doing here" and then told her "[g]et back, Babe, he's got a gun."  *Id.* at 66-67.  Appellant's wife testified that after Appellant told her to get back, she looked into the car and saw that the driver was pointing a large handgun at her and Appellant. *Id.* at 67.  Appellant's wife, like Appellant, testified that the driver repeatedly told them to check the license plate and that the standoff ended after she reported that the license plate said "disabled veteran."  *Id.* at 67-68.  The president of the Fire Company testified that Appellant and his wife were responsible for taking care of the Fire Company's social hall and that there were "No Trespassing" signs posted on the property.  *Id.* at 53-56.  He also testified concerning the Fire Company's video security cameras.  *Id.* at 54-55.

The video recording played at trial shows Appellant and his wife walking to the Fire Company parking lot and up to where the car was, shows Appellant raising the shotgun, stepping back, and aiming the shotgun at the location where the car was, and shows him holding the shotgun up and aimed in that direction for approximately 50 seconds before lowering it.  Neither the inside

of the car nor its occupants, however, are visible in the portion of the video where Appellant is approaching the car and pointing the shotgun and the video contains no audio recording. The video shows Appellant's wife following Appellant when he approaches the car and standing near him while he is pointing the shotgun at the car and she does not appear to exhibit any reaction that indicates that she is afraid.

At the close of the evidence, the trial court dismissed the aggravated assault charges. N.T. at 112. The charges of simple assault by physical menace with respect to Mettler, reckless endangerment with respect to Mettler, simple assault by physical menace with respect to Maurer, and reckless endangerment with respect to Maurer were submitted to the jury. *Id.* at 134-35. The jury, on October 20, 2021, found Appellant guilty of simple assault by physical menace with respect to Maurer and not guilty on the other three charges. *Id.* at 142; Verdict Sheet.

On November 15, 2021, the trial court sentenced Appellant to 3 to 23 months' incarceration. Sentencing at 47-48; Sentencing Order. Appellant filed a timely post-sentence motion in which he contended that the verdict was against the weight of the evidence. The trial court denied Appellant's post-sentence motion on December 2, 2021, and this timely appeal followed.

Appellant argues two issues in this appeal: 1) whether the evidence at trial was insufficient to prove the intent required for a conviction for simple

assault by physical menace and 2) whether the verdict was against the weight of the evidence. Appellant's Brief at 6-7.[2] Neither of these issues merits relief.

Our standard of review in a challenge to the sufficiency of the evidence is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

***Commonwealth v. Antidormi***, 84 A.3d 736, 756 (Pa. Super. 2014) (quoting

***Commonwealth v. Estepp***, 17 A.3d 939 (Pa. Super. 2011)).

The offense of simple assault by physical menace is defined as follows:

Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:

*          *          *

(3) attempts by physical menace to put another in fear of imminent serious bodily injury ….

---

[2] Appellant lists his claim that the verdict was against the weight of the evidence as two issues, one concerning Maurer's testimony and one concerning Mettler's testimony, but briefs these as one issue in the argument section of his brief.

18 Pa.C.S. § 2701(a)(3). To prove this offense, the Commonwealth must prove that the defendant intentionally placed another in fear of imminent serious bodily injury through the use of menacing or frightening activity. **Commonwealth v. Reynolds**, 835 A.2d 720, 726 (Pa. Super. 2003); **Commonwealth v. Repko**, 817 A.2d 549, 554 (Pa. Super. 2003), **overruled in part on other issue**, **Commonwealth v. Matthews**, 870 A.2d 924 (Pa. Super. 2005) (*en banc*).

Appellant argues that the evidence was insufficient to prove that he intended to place Maurer in fear of imminent serious bodily injury. We do not agree. The defendant's intent can be proven by circumstantial evidence and may be inferred from the defendant's conduct. **Reynolds**, 835 A.2d at 726; **Repko**, 817 A.2d at 554. The act of pointing a firearm at another person is sufficient to prove intent to place that person in fear of imminent serious bodily injury. **Reynolds**, 835 A.2d at 726-27; **Repko**, 817 A.2d at 554-55; **In re Maloney**, 636 A.2d 671, 674 (Pa. Super. 1994); **Commonwealth v. Krick**, No. 490 WDA 2020, at 6-7 (Pa. Super. March 19, 2021) (unpublished memorandum). Here, Maurer testified that Appellant walked up to her car window and pointed a shotgun at her face. N.T. Trial at 19-20. That evidence alone was sufficient for the jury to infer and find that Appellant intended to place Maurer in fear of imminent serious bodily injury.

Appellant asserts that there was insufficient evidence of the required intent because the shotgun was unloaded and he did not have his finger on

the trigger. Neither of those facts negates intent to place the victim in fear of imminent serious bodily injury. The law is clear that pointing an unloaded firearm at another person is sufficient to prove intent to place in fear of imminent serious bodily injury and to support a conviction for simple assault by physical menace where, as here, the victim does not know that the firearm is unloaded. *Commonwealth v. Gouse*, 429 A.2d 1129, 1131 (Pa. Super. 1981); *Commonwealth v. Trowbridge*, 395 A.2d 1337, 1340-41 & n.8 (Pa. Super. 1978) (*en banc*); *Krick*, No. 490 WDA 2020, at 2, 6-7; *see also Reynolds*, 835 A.2d at 728 (issue of whether gun that defendant pointed at victims was unloaded was relevant only to reckless endangerment, not simple assault by physical menace conviction).

Our decisions in *Reynolds*, *Repko*, *Maloney*, and *Krick* holding that pointing a firearm at the victim is sufficient to prove intent do not indicate that there was any evidence that the defendant's finger was on the trigger and do not suggest that such a fact is essential to prove intent to place the victim in fear of imminent serious bodily injury. Indeed, approaching a person while holding a firearm while shouting obscenities at the person can be sufficient to show intent to place the victim in fear of imminent serious bodily injury, even where the defendant does not point the gun at the victim. *Commonwealth v. Little*, 614 A.2d 1146, 1147-48 & n.2, 1151-55 (Pa. Super. 1992). Here, the Commonwealth also introduced evidence that Appellant screamed an

obscenity at Maurer and Mettler while holding the shotgun and said "[a]re you ready to die?" while pointing the shotgun at them. *Id.* at 20-22, 33-35.

Appellant also contends that no intent to place Maurer in fear was shown because he pointed the shotgun at the car only after Mettler pointed a gun at him. The Commonwealth, however, introduced evidence that Appellant pointed the shotgun at Maurer before Mettler drew his gun. Not only did Maurer testify that Appellant came up to the car window and pointed the shotgun at her before Mettler got his gun, but Mettler testified that he got his gun after Appellant raised the shotgun and the trooper testified that Appellant said that he approached the car and pointed the shotgun "at the victim's head," not that he raised the shotgun after a gun was pointed at him. N.T. Trial at 19-21, 27, 29-30, 34, 40, 45-46. We judge the sufficiency of the evidence by whether the evidence supporting the Commonwealth's case was sufficient if believed by the jury to prove the elements of the offense, not based on Appellant's disputed version of facts, which the jury rejected. *Commonwealth v. James*, 268 A.3d 461, 469 (Pa. Super. 2021); *Antidormi*, 84 A.3d at 756-57.

Appellant's remaining issue likewise fails. A new trial may be granted on the ground that the verdict is against the weight of the evidence only where the verdict was so contrary to the evidence that it shocks the trial court's sense of justice. *James*, 268 A.3d at 468; *Antidormi*, 84 A.3d at 758. Our review of the denial of a motion for a new trial based on weight of the evidence

is limited. We review whether the trial court abused its discretion in concluding that the verdict was not against the weight of the evidence, not whether the verdict, in this Court's opinion, was against the weight of the evidence. *Commonwealth v. Clemons*, 200 A.3d 441, 463-64 (Pa. 2019); *Commonwealth v. Delmonico*, 251 A.3d 829, 837 (Pa. Super. 2021).

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge …. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence.

*Antidormi*, 84 A.3d at 758 (quoting *Commonwealth v. Clay*, 64 A.3d 1049, (Pa. 2013)) (brackets omitted).

Appellant argues that Maurer's and Mettler's testimony is contradicted with the video recording played at trial, which he claims support his and his wife's testimony that he raised the shotgun in response to Mettler pointing a gun at him. That argument misstates what the video showed. As the trial court noted, Trial Court Opinion, 12/2/21, at 4, the video does not show the inside of the car or Maurer's or Mettler's actions during the time period when Appellant approached the car and pointed his shotgun at them. It therefore does not show whether Mettler drew his gun before or after Appellant pointed the gun at Maurer. While the video shows Appellant stepping back from the car as he raises the shotgun and aims it at the car, it does not show him or his wife taking cover and is not inconsistent with the conclusion that Appellant moved back to position himself to aim the shotgun or moved back in response

- 11 -

to Mettler's verbal response to Appellant's question why he was in the parking lot, rather than in reaction to seeing a gun. Because the video is not irreconcilable with Maurer's and Mettler's testimony, it does not show that the jury's verdict was against the weight of the evidence. *Commonwealth v. Wall*, 953 A.2d 581, 586 (Pa. Super. 2008) ("Where an appellant argues that physical evidence is 'inconsistent' with a victim's testimony, but that evidence does not necessarily exculpate him, the fact-finder may entertain a defendant's alternative theory and reasonably reject it").

Appellant also argues that there were inconsistencies between Maurer's testimony and her statement to the state trooper and between some details of Maurer's and Mettler's testimony. These inconsistencies, however, were on matters other than the key issue of what Appellant said and did. Such inconsistencies in witnesses' testimony are issues of credibility for the jury to resolve, not grounds for a new trial on weight of the evidence grounds. *Delmonico*, 251 A.3d at 838; *Commonwealth v. Stokes*, 78 A.3d 644, 651 (Pa. Super. 2013). The trial court, which observed the witnesses, did not abuse its discretion in concluding that "[t]he evidence at trial was not one-sided or so weighted in favor of acquittal that it shocked the Court's sense of justice." Trial Court Opinion, 12/2/21, at 4.

For the foregoing reasons, we conclude that the issues raised by Appellant do not merit relief. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/27/2022